390 So.2d 196 (1980)
Dalila T. CANGELOSI
v.
SCHWEGMANN BROTHERS GIANT SUPER MARKETS.
No. 67150.
Supreme Court of Louisiana.
October 6, 1980.
John P. Massicot, Frank A. Silvestri, New Orleans, for plaintiff-applicant.
C. Monk Simons, III, New Orleans, for defendants-respondents.
MARCUS, Justice.[*]
This tort suit for damages arose out of an incident which occurred when plaintiff was a cashier in defendant's supermarket. Plaintiff alleges that defendant's supervisory personnel defamed her and invaded her privacy during an investigation of a customer's altered check. A jury awarded damages in the amount of $13,500. The verdict was made a judgment of the court. The court of appeal reversed, finding no *197 factual basis in the record to support a finding of tortious conduct by any person for whom defendant was vicariously liable.[1] Upon plaintiff's application, we granted certiorari.[2]
Plaintiff had been employed by defendant as a cashier for seven years. On June 22, 1977, Mrs. Frances Navis, a customer, presented a check for $37.02 for her purchases at plaintiff's check-out counter. Approximately two months later, Mrs. Navis informed defendant's store manager that her check had been altered to $57.02. An investigation of the incident revealed that plaintiff had accepted the check, that the check had in fact been altered, and that plaintiff's cashier deposit report showed a check for $57.02 rather than $37.02 was recorded in the report. Shortly thereafter, plaintiff was called into the store's vault room and, in the presence of the store manager, check cashing supervisor, vault room supervisor and plaintiff's supervisor and assistant supervisor, was shown a picture of the check and the customer.
According to plaintiff's version, she was asked if she recognized the customer, to which she replied that she had seen that person shopping in the store on previous occasions. Defendant's store manager then asked plaintiff what color ink she had used that day and if she had in fact altered the check. Plaintiff became quite hysterical, replied that she had a good work record, requested a lie detector test, and was then taken into the ladies lounge by her supervisor, where she proceeded to tell other employees about what had occurred in the vault room. Plaintiff's daughter, who had been called by plaintiff's supervisor, came to the store and brought plaintiff home. Plaintiff worked for several more days and took a lie detector test but was fired one week after the incident in the vault room, although the test results were favorable. The sum of $18 was deducted from her final paycheck.
The version related by defendant's employees was that they simply showed plaintiff the check and photograph, whereupon she became hysterical, even though they assured her she was not being accused. They testified that plaintiff subsequently stated that she intended to resign from her employment as soon as she completed the lie detector test and cleared her reputation of any wrongdoing, but later declined to do so because she learned she would be disqualified for unemployment compensation. Accordingly, her employment was terminated which was approximately one week after the incident in the vault room. Defendant contends that the $18 was paid by plaintiff at the time of her termination pursuant to a written agreement whereby plaintiff agreed to pay for "all shortages or monies over a tolerance of $1.00 per week."
The record is unclear as to the events that followed. The separation notice alleging disqualification sent by defendant to the Department of Employment Security sets forth as the reason for separation: "Resigned employee turned in her resignation 8-15-77 to supv. due to a personal hardship that would continue if she stood on the job." However, the notice to appear for a hearing before the appeals referee notes as alleged grounds for disqualification: "You were discharged from your job for misconduct connected with the work or you voluntarily resigned from your job." After a hearing, the appeals referee determined that an employee who retracts her resignation but is required by her employer to leave anyway, was discharged from her job under nondisqualifying circumstances. Finding that plaintiff's discharge from employment was not due to misconduct connected with her employment, no disqualification was assessed. As a result, plaintiff received unemployment benefits for approximately six months. Plaintiff then instituted this suit for damages against defendant.
Plaintiff's claim for damages arising out of these facts is essentially an action in defamation. The sole issue presented for our resolution is whether the jury verdict *198 awarding damages in favor of plaintiff and against defendant was clearly wrong justifying reversal by the court of appeal.
To maintain an action in defamation, the following elements must be shown: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. HMC Corp. v. New Orleans Basketball Club, 375 So.2d 700 (La. App. 4th Cir. 1979), writs denied, 378 So.2d 1384, 379 So.2d 11 (1980); Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir. 1979); Lees v. Smith, 363 So.2d 974 (La.App. 3d Cir. 1978); Perrilloux v. Batiste, 357 So.2d 841 (La.App. 4th Cir. 1978); Harper v. Jeans, 353 So.2d 1093 (La.App. 2d Cir. 1977), writ denied, 355 So.2d 264 (La.1978); Ward v. Sears, Roebuck & Co., 339 So.2d 1255 (La.App. 1st Cir. 1976); Lake Charles Diesel Inc. v. Guthridge, 326 So.2d 613 (La.App. 3d Cir. 1976); Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2d Cir. 1975); Rogeau v. Firestone Tire & Rubber Co., 274 So.2d 454 (La.App. 3d Cir. 1973). Accord, Makofsky v. Cunningham, 576 F.2d 1223 (5th Cir. 1978).
First, plaintiff asserts that the "questioning" by defendant's personnel during the confrontation in the vault room was more "accusatory" than investigatory, thus constituting defamation. We do not agree. Even accepting plaintiff's version of what occurred, we find no factual basis from which to conclude that defendant's personnel used defamatory language or that the questions posed to plaintiff were accusatory or libelous in nature. While words which impute a crime to another are defamatory per se, Trahan v. Ritterman, supra, Becnel v. Boudreaux, 340 So.2d 687 (La.App. 4th Cir.), writ denied, 342 So.2d 671 (1977), no one in the instant case accused plaintiff of stealing or called her a thief. Nor did plaintiff prove that the statements made by defendant's personnel in the vault room constituted a publication. Those persons present at the vault room meeting were supervisory personnel essential to the investigation-not third persons to whom the statements were communicated or publicized. Plaintiff herself made the sole communication as to the existence of an investigation when she entered the ladies lounge and proceeded to relay the events of the meeting to other employees in the lounge. Furthermore, we agree with the court of appeal that the record discloses a sufficient basis to justify defendant's good faith and lack of malice in provoking an investigation regarding plaintiff's involvement in the incident. The court of appeal correctly reasoned:
When an alteration is made to a check received by a store owner's employee in the regular course of business, the employer is certainly entitled to investigate the circumstances surrounding the incident, as long as the investigation is conducted in good faith and in a reasonable manner.
Additionally, we do not find that the $18 deducted from plaintiff's paycheck constituted an indirect imputation or insinuation of guilt upon which an action in defamation would lie. To the contrary, defendant was carrying out an ongoing management policy applicable to all of its cashiers when a shortage of monies occurred in any given week. Also, plaintiff agreed to pay for these shortages at the time of her employment.
Finally, we reject plaintiff's contention that defendant defamed her when it challenged her request for unemployment compensation. Louisiana's unemployment compensation laws provide that a claimant shall be disqualified for benefits when discharged for misconduct connected with his employment. La.R.S. 23:1601(2). First, the record is unclear upon what basis defendant alleged disqualification. In any event, the findings of fact by the appeals referee indicate only a dispute over whether plaintiff could withdraw her two weeks notice to resign after defendant had accepted her resignation. This dispute was resolved in plaintiff's favor; no disqualification was assessed.
In sum, our review of the record convinces us that the jury was clearly wrong in finding that plaintiff proved the necessary elements to maintain an action in defamation. *199 Accordingly, the court of appeal correctly reversed the judgment of the trial court. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
DIXON, C. J., and CALOGERO, J., dissent with reasons.
WATSON, J., dissents for reasons assigned by DIXON, C. J.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
Plaintiff was accused of theft in the presence of others, an act which gives rise to damages unless the accuser can prove the truth of the accusation.
CALOGERO, Justice, dissenting.
I respectfully dissent. Words which impute a crime to another are defamatory per se. Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir. 1979). Plaintiff was accused in the presence of others of altering a check. Unless the accuser can prove the truth of the accusations, he is liable to the plaintiff for damages she suffered.
NOTES
[*] The Honorable Gerald P. Fedoroff participated in this decision as an Associate Justice Ad Hoc in place of Associate Justice Harry T. Lemmon, who was recused.
[1] 379 So.2d 836 (La.App. 4th Cir. 1980).
[2] 384 So.2d 793 (La.1980).