ELLIS, Judge.
This is a suit for libel and malicious prosecution, brought by Hubert Lincecum against AdServ Corporation. It is alleged that certain allegations in a lawsuit filed by AdServ against plaintiff were false and misleading and exposed plaintiff to ridicule and scorn. It is further alleged that Ad-Serv conspired to deprive plaintiff of his employment, causing loss of salary and fringe benefits. Plaintiff prayed for damages for loss of wages and fringe benefits, damage to his reputation and credit, and punitive damages.
Trial on the merits was held before a jury, which rendered a verdict giving plain *1248 tiff $20,000.00 for loss of wages and fringe benefits; $344,000.00 for damages for malicious prosecution; $7,630.00 for attorney’s fees incurred in defending the suit against him by AdServ; $1,000,000.00 in damages for defamation; and $525,000.00 in punitive damages. Judgment was signed accordingly, and defendant moved for a new trial, or alternatively, a remittitur. After hearing argument on the motion, the trial judge granted a remittitur, which struck the awards for loss of wages and fringe benefits, and the award for attorney’s fees; reduced the award for malicious prosecution to $25,000.00; reduced the award for defamation to $150,000.00; and reduced the punitive damages to $150,000.00. Plaintiff accepted the remittitur, and judgment was signed accordingly. From that judgment, defendant has appealed, complaining of the findings of the jury as to liability and as to the amount of the award. Plaintiff has answered the appeal, asking that awards be made for attorney’s fees and loss of wages and fringe benefits, and complaining that the jury award should not have been reduced.
The record shows that plaintiff was employed by the Division of Administration of the State of Louisiana, working in an executive capacity in the State Employees Group Benefits Program. At the time he was first employed, November 28,1977, employees of the Division of Administration were unclassified employees of the State Civil Service. At that time, the claims aspect of the Group Benefits Program was being administered by Continental Assurance Company (CNA) under a contract with the State of Louisiana. Other aspects of the administration of the program were being handled by employees of the Division of Administration.
In 1978, following a decision of the Supreme Court of this state, virtually all employees of the Division of Administration were to become classified Civil Service employees. For some time prior to that event, negotiations relative to the installation of certain computer software, for the purpose of handling claims in the Group Benefits Program, had been carried on with AdServ Corporation. It had been agreed that Ad-Serv was to install its system, under a contract with CNA, beginning June 1, 1979. The beginning date was then moved forward to May 15,1979, and plaintiff, and all other members of his department, were transferred from the payroll of the Division of Administration to the payroll of AdServ, at the same salaries, working in the same place and using the same state-owned equipment.
It appears from the record that, had the transfer to Civil Service been effected, some of the employees of plaintiff’s department would have stayed at the same pay, some would have received increases in salary, and some, including plaintiff, would have received a cut in pay. However, all would have continued to be members of the State Retirement System and the Group Benefits Program.
Plaintiff was of the opinion that the transfer of personnel to AdServ was done to avoid having those persons come under Civil Service. He testified that the maneuver resulted in an increase in the cost of the system to state employees. He was further concerned about the loss of his retirement and other benefits. He consulted with the Baton Rouge District Attorney, who, in turn, got in touch with the chairman of a legislative committee which had been investigating the Group Benefits Program. As a result, plaintiff was asked to appear before the committee and testify. He did so, with the permission of his superior at AdServ.
Before the committee on May 30, 1979, plaintiff testified that the Group Benefits Program was “in trouble” as to management and operation. He testified that the claims backlog had been in the neighborhood of 4,000 to 5,000; that a new computer was installed in the CNA part of the office, which he had been told cost $819,000.00; and that in two and one-half months, since the system was put in, the backlog had risen to 10,961 unpaid claims. He related his version of the transfer of the employees to AdServ, which was identified as the company that sold the new computer to CNA, and said:
*1249 “Now, gentlemen, if that is the proper way to run an insurance program for the protection of all of the state employees and many of the political subdivisions of the state, then I’m a Chinese aviator.”
He further stated:
“I used to represent state employees and I have got feelings for them, and I’m telling you here and now that the state employees of the State of Louisiana are being ripped off by the state group insurance program as it stands today. Not as it stood prior to us being employed by the consultant, who was employed by the firm from San Francisco, who is employed by CNA, who is employed by the state.”
Other testimony by plaintiff before the legislative committee further detailed the manner in which AdServ moved into the group insurance program.
As a result of the newspaper reports of plaintiff’s testimony, plaintiff was fired by AdServ, and AdServ filed a defamation suit for $500,000.00 against plaintiff. Articles 4, 5, and 6 of the petition made the following allegations:
Article 4. “During the course of defendant’s testimony before the said House Appropriations Committee, defendant defamed your petitioner by making false, misleading and totally inaccurate statements concerning petitioner’s management of the Louisiana State Employees’ Group Insurance Program.”
Article 5. “More particularly, defendant alleged that state employees were being ‘ripped off’ by the group insurance program managed by your petitioner, as well as numerous other derogatory and defamatory remarks concerning your petitioner, the substance of which remarks will be proved upon the trial of this matter.” Article 6. “Petitioner further alleges that the said statements made by defendant were false, malicious, and were made by defendant with knowledge of their falsity or with reckless disregard for the truth of same for political reasons.”
That suit was eventually dismissed because of AdServ’s failure to qualify to do business in Louisiana.
Shortly before the final dismissal of Ad-Serv’s suit against him, plaintiff filed this suit against AdServ, alleging that he was a classified Civil Service employee of the State prior to his transfer to AdServ; that the transfer to the employment of AdServ was the result of a conspiracy between certain employees of the Division of Administration and AdServ to violate the Civil Service laws; and that plaintiff’s firing after his testimony before the legislative committee was not legal because he was protected from punitive firing as a classified civil servant.
The petition further alleges that the lawsuit filed against him by AdServ was the result of a conspiracy to discredit plaintiff; that the lawsuit “accused your petitioner of making ‘false, misleading and totally inaccurate statements’ in sworn testimony before the aforesaid legislative committee”; that those allegations were made either with the knowledge that plaintiff’s statements were true, or with a reckless disregard as to whether the allegations in the petition were extensively publicized in the media, and subjected plaintiff to ridicule and scorn. Plaintiff then asked for damages as above set forth.
At the trial, plaintiff and his witnesses testified substantially to the facts as herein-above set forth. The witnesses for AdServ testified that the company was approached by personnel from the Division of Administration because it had a software system which could be readily adapted to paying claims. AdServ was preparing to install the system, when it was asked, very suddenly, to take over other administrative tasks, using as its employees the state employees who had been performing the work. AdServ then engaged a consultant to come in and set up the program and train someone to run it. It was during the early phase of this operation that plaintiff’s testimony was publicized, and AdServ sought legal counsel because it was felt that the reports of plaintiff’s testimony were damaging to AdServ’s reputation. The suit against *1250 plaintiff was filed on advice of counsel, who was of the opinion that plaintiff’s remarks were defamatory. It was further shown that the claims paying system installed by AdServ was still being used, successfully, by the Group Benefits Program.
Other testimony indicated that about 5,000 claims were filed with the program each week, so that a 10,000 case backlog represented only a two-week buildup of cases. It was further testified, by Joe Terrell, the former Deputy Commissioner of Administration who had overall supervision of the Group Benefits Program, that the employees had been transferred to AdServ in an effort to maintain the efficiency of the system, rather than in an attempt to subvert the Civil Service laws.
In the recent case of Cangelosi v. Schwegmann Bros., etc., 390 So.2d 196 (La. 1980) the court said:
“To maintain an action in defamation, the following elements must be shown:
(1)defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury.”
In Hibernia Nat. Bank of New Orleans v. Bolleter, 390 So.2d 842 (La.1980) the Supreme Court reiterated the requirements for a successful suit for malicious prosecution:
“In Robinson v. Goudchaux’s, 307 So.2d 287, 289 (La.1975), this court defined the elements necessary to support a claim for malicious prosecution:
‘... (1) The commencement or continuance of an original criminal or civil judicial proceeding.
(2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding.
(3) Its bona fide termination in favor of the present plaintiff.
(4) The absence of probable cause for such proceeding.
(5) The presence of malice therein.
(6) Damage conforming to legal standards resulting to plaintiff.’ ”
It is further settled that parties to a suit enjoy a qualified privilege for defamatory allegations made therein, if the allegations are material, and are made with probable cause and without malice. Waldo v. Morrison, 220 La. 1006, 58 So.2d 210 (1952). This qualified privilege would bar recovery for such allegations in either a defamation suit or a malicious prosecution action. We note that the jury was not instructed as to the law relative to the qualified privilege.
At the time that plaintiff gave his testimony before the legislative committee, Ad-Serv had been on the job for two weeks, and had not yet taken any action to change, in any way, the procedures which had been followed prior to its employment. There is no evidence in the record to indicate that AdServ’s employment in any way increased the cost of the system. The salaries of the employees were passed through to the State, without any change. AdServ’s fee was to be paid by CNA, without any increase in the amount paid to CNA.
Plaintiff’s testimony before the legislative committee is in the record, and the implications of impropriety on the part of AdServ are clear. This is borne out by the unfavorable newspaper publicity received by AdServ as a result of plaintiff’s testimony. It was because of the unfavorable newspaper publicity that AdServ caused to be filed the suit which contained the allegedly defamatory allegations.
Under the foregoing circumstances, which are unrefuted in the record, it is clear that AdServ enjoyed the qualified privilege described in the Waldo case, supra. The allegations are certainly material, if not essential, to the cause of action set forth therein. Probable cause depends not only on the actual state of the facts giving rise to the action, but also upon the plaintiff’s honest belief as to the state of the facts when the suit is filed. Leaman & Co., Inc. v. Victory Iron Works, 411 So.2d 666 (La.App. 4th Cir. 1982). There can be no doubt that AdServ, after only two weeks on the job, and finding itself blamed for defects in the Group Benefits Program, had probable cause to institute the suit against plaintiff.
*1251 There is no proof of actual malice in the record. Malice may be inferred when “there is a lack of probable cause resulting from wanton and reckless disregard of the rights of the party sued, evincing absence of that caution and inquiry a party should employ before filing suit.. .. ” Hibernia Nat. Bank of New Orleans v. Bolleter, supra. Those circumstances simply do not exist in this case.
We recognize that, in reaching its verdict the jury must have found that the allegations were false, without probable cause, and malicious. However, we find that the evidence in the record is insufficient to reasonably justify the above conclusions, and that the jury committed manifest error and was clearly wrong in concluding otherwise. Even without the qualified privilege, we do not believe that plaintiff should prevail, particularly since he enjoys the status of a public official, and clear and convincing evidence of malice is not in the record.
We further find that there is no evidence in the record to justify a conclusion that AdServ was part of a conspiracy to deprive plaintiff of his employment.
Finally, we find that under R.S. 42:261 E plaintiff is not entitled to attorney’s fees for defending the original action against him by AdServ. Although plaintiff was a public official, his testimony before the legislative committee did not arise “out of the performance of the duties of his office,” so that the provisions of R.S. 42:261 E do not apply to him.
The judgment appealed from is therefore reversed, and there will be judgment in favor of defendant, dismissing plaintiff’s suit at his cost.
REVERSED AND RENDERED.