CRAIN, Judge.
This is an appeal of judgments awarding summary judgment and declaratory judgment in favor of the defendants.
FACTS
Guaranty Income Life Insurance Company (GILIC) sold dental insurance policies insuring a portion of their subscribers’ expenses for dental and orthodontic services. Dental Health Plans Management (DHPM) contracted with the dentists and orthodontists to provide services to the policyholders of GILIC. When DHPM ceased contracting with dentists and orthodontists, GILIC used one of its other companies, Guaranty Agency, Inc. (GAI) to contract with the dentists and orthodontists to provide the needed services. Payments to the dentists are not in dispute. This action is limited to the obligation for payments for orthodontic services.
The agreement with the orthodontists provided that after services were provided to the policyholders, monthly payments (usually fifteen to twenty-five dollars per month) would be paid until the obligation was extinguished.
GILIC decided to sell the dental policies. Thomas Marino, a former employee of DHPM and consultant for GAI and GILIC, expressed an interest in purchasing the dental policies. The Insurance Code requires that only a qualified and licensed insurer may accept assignment and assumption of the dental insurance policies. Marino formed Columbus Holding Company, Inc. (Columbus) as the insurance company and Prepaid Dental Marketing Systems, Inc. (PDMS) as the marketing/administrative agency. An agreement was executed between GILIC and Columbus. Columbus agreed to purchase the dental health policies upon its formation of an insurance company qualified and licensed under the Louisiana Insurance Code. However, Columbus was rejected in its application for licensing. Marino then approached Investors Insurance Company (IIC) with the intention that IIC purchase the dental policies and use PDMS to administer the policies, in the same manner that GAI did for GILIC. Marino held 25% of the PDMS stock and served as its president. Dr. Doyle Phillippi,[1] Dr. Ed. Quimby and Don- *771 aid J. LeBlanc each held 25% of the PDMS stock. IIC then purchased the dental policies from GILIC. An extensive written agreement was executed in which IIC would have “no liability for lawsuits or claims instituted or incurred prior to September 1, 1983.” IIC and PDMS executed an agreement whereby PDMS would serve as an administrator for IIC in contracting with dentists and orthodontists to service IIC subscribers. PDMS immediately changed the agreement with the orthodontists to provide for a payment in advance and a percentage discount by the orthodontists to the policyholders for services rendered rather than monthly installments. Marino also made payments to orthodontists for services rendered prior to September 1, 1983. Phillippe and others were losing money through PDMS and requested Marino to explain why he was making the orthodontic payments since IIC did not assume this obligation. Marino evaded their requests and he was removed from his position at PDMS. Phillippe contacted GILIC and GAI and attempted to negotiate a settlement for reimbursement of the amounts expended in payment of the orthodontic fees. GILIC denied liability for the obligation, contending that PDMS had assumed the obligation, based on the negotiations with Marino when he was attempting to purchase the dental policies through Columbus. Marino was not present, nor did he participate in the negotiations between GILIC and IIC. He admitted that he had not seen the agreement between GILIC and IIC before it was shown to him at the deposition. It is undisputed that there is no writing representing an agreement between GILIC, GAI and PDMS.
Tom Clark and Charles Sherburne, officers of GILIC and GAI, allege that Doyle Phillippe stated that, if a settlement was not reached, he would inform the orthodontists under contract and policyholders that PDMS' was not responsible for the orthodontic payments, that GILIC and GAI were responsible, and the orthodontists and policyholders should address GILIC and GAI for payment. They further allege that Phillippe has stated this to orthodontists and shareholders.
In the course of these negotiations, it is alleged that Phillippe stated that he felt that Thomas Marino might have been getting kickbacks from GILIC and GAI and that there might be a conspiracy. GILIC and GAI filed an action for defamation, contending that Phillippe had accused them of a crime and that PDMS and Phillippe had defamed them by stating that GILIC and GAI were liable for the orthodontic payments. Phillippe and PDMS deny that any statements were made regarding a crime and deny any obligation on their part for the orthodontic payments. Phillippe and PDMS filed a motion for summary judgment on the defamation action and a recoventional demand for a declaratory judgment on the obligations of PDMS, GIL-IC and GAI, with respect to the orthodontic payments. They also seek reimbursement for any payments previously paid by PDMS should the obligation be that of GILIC or GAL
The trial court granted the motion for summary judgment by the defendants and held in the reconventional demand that GILIC and GAI were obligated for the orthodontic payments.
The issues for review are whether an agreement to assume the debt of another must be in writing to be enforced as between the obligor and the assuming party; the liability of GILIC, GAI and PDMS as to the obligation for the orthodontic payments; and the correctness of the trial court in granting the motion for summary judgment as to the defamation action. Appeals were taken separately on the trial judgment granting the motion for summary judgment and on the reconventional demand for declaratory judgment. They have been consolidated. Although the action for defamation was filed prior to the declaratory action regarding the obligation for orthodontic payments, we prefer to address them in the more logical fashion.
OBLIGATION FOR ORTHODONTAL PAYMENTS
The trial judge held that La.C.C. art. 1821 requires that the agreement by *772 PDMS to assume the debt of GAI must be in writing. Consequently, the written agreement between IIC and GILIC wherein GILIC remained liable for pre-September 1, 1983, claims was held to control regardless of the existence of a subsequent oral agreement by PDMS and GAL We find requiring a written agreement to be error. However, we make no determination as to the existence of an oral agreement.
La.C.C. art. 1821 states in part:
An obligor and a third person may agree to an assumption by the latter of an obligation by the former. To be enforceable by the obligee against the third person, the agreement must be made in writing. (Emphasis supplied).
The present case involves a La.C.C. art. 1821 situation since it is a promise between two parties whereby one party agrees to assume the debt of the other as part of a contract. The benefitting party is an obli-gee. The only limitation is that, if the party in whose favor the contract was entered into, the obligee, attempts to enforce the agreement against the assuming party, the agreement has to be in writing. However, here the two contracting parties are disputing the obligation, not the obligee. Therefore, as between these parties the agreement does not have to be in writing.
The appellees argue that La.C.C. art. 1847 applies so that the contract here cannot be proved by parol evidence. That article is inapplicable. It provides, in pertinent part, that “parol evidence is inadmissible to establish a promise to pay the debt of a third personHere there is no promise to pay the debt of a third party. There is the promise of one contracting party to assume the other contracting party’s debt. Under La.C.C. art. 1847, the third party beneficiary is an obligor. Here the benefitting party is an obligee. Consequently, the only limitation on enforcement is the La.C.C. art. 1821 limitation if the benefitting party (obligee) tries to enforce the agreement. See Baskin v. Abell, 14 La.App. 601, 122 So. 133 (1929).
We are dealing with an alleged agreement between parties and a dispute between these parties as to the effect of the agreement. Louisiana has consistently recognized the validity of oral agreements in these situations and we see no reason to treat this matter differently.
The trial court made no finding as to whether there was or was not an oral agreement, simply that there could not be an oral agreement. Although we find it somewhat unusual that these parties would have transacted business in writing with such specificity with IDIC, and have an oral agreement with so little clarity with PDMS to assume an ongoing obligation, we do not make a finding as to the existence of the oral agreement. We also do not determine the respective obligations of the parties under the agreement, and whether any such agreement could be binding on the dentists, orthodontists, or dental service contractors. This is a determination to be made by the trial court. Since the sole basis of the decision of the trial court is that no oral agreement is possible, we must reverse the judgment of the trial court and remand for further proceedings in accordance with this decision.
REQUIREMENTS OF THE INSURANCE CODE AS TO PDMS AND IIC
The appellees (PDMS and IIC) argue, nonetheless, that declaratory judgment should be awarded in their favor because the insurance code requires that PDMS be a qualified and certified insurer in Louisiana before assuming the obligation to the orthodontists for services rendered under the professional service contracts. We do not agree.
La.R.S. 22:1510-22:1513 regulate dental service contractors. La.R.S. 22:1511(A) requires that a dental service contractor be a licensed insurer, but La.R.S. 22:1510(2) defines “dental service contractor” as “any person who accepts a prepayment from or for the benefit of any other person or group of persons as consideration for providing ... the opportunity to receive dental services”. The “dental service contractor” provides the professional service to the subscriber. However, La.R.S. 22:1510-22:1513 do not require that a person be an *773 insured “dental service contractor” in order to contract directly with dentists to provide professional services to the subscribers of dental policies. The legislature could have required that the party to contract for professional services to fulfill dental insurance policies be an insurer and have thereby encompassed PDMS. They did not do so. We cannot add to this restriction.
The Louisiana Supreme Court, in Doucet v. Dental Health Plans Management Corporation, 412 So.2d 1383 (La.1982), held that the agreement by the dentist to provide professional services to subscribers of dental policies did not qualify as a contract of insurance and was therefore not subject to a provision of the insurance code that would have rendered an arbitration requirement in the agreement unenforceable. The court recognized that the issue of payment of the dental fees was not based on the dentist’s status as an insured under a contract of insurance, but instead as a result of a professional services contract.
It is not necessary that PDMS be a qualified insurer before contracting with the orthodontists.
SUMMARY JUDGMENT ON ISSUE OF DEFAMATION
Summary judgment should be granted when reasonable minds must conclude that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Chaisson v. Domingue, 372 So.2d 1225 (La.1979). The mover has the burden of establishing both requirements. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). If there is any doubt about satisfaction of the burden, the doubt should be resolved against granting the summary judgment and in favor of trial on the merits. Vermilion Corp. v. Vaughn, supra; Jewell v. Thompson, 386 So.2d 689 (La.App. 3d Cir.), writ denied, 393 So.2d 746 (La.1980).
The appellants allege that PDMS and Dr. Phillippe committed defamation against them in two separate actions. First, they allege that Dr. Phillippe and PDMS informed policyholders and orthodontists that GILIC, and not PDMS, was liable for orthodontic payments, and second, they allege that PDMS imputed to them the commission of a crime.
To maintain an action in defamation, the following elements must be shown: 1) defamatory words; 2) publication; 3) falsity; 4) malice, actual or implied; and 5) resulting injury. Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196 (La.1980).
The trial court found the denial of liability for orthodontic payments by the defendants to be correct based on his holding that the agreement to assume liability must be in writing. This reasoning no longer prevails in light of our holding that the contract need not be written. However, even if PDMS is found ultimately to have assumed liability under an oral agreement, that does not mean that what is alleged to have been said about liability is defamatory. It is simply a matter that must be further considered by the trial court since the basis for its original ruling was in error.
The trial court found that the allegations in paragraph nine of the petition as to the accusation of a crime were supported only by the affidavit of Dale Barringer, counsel for the appellants, which was based on hearsay from another attorney whose affidavit was not included. The motion for summary judgment merely denied that Dr. Phillippe made any such accusations. The issue of whether he made any statements accusing the appellants of a crime is an issue of fact that cannot be resolved by a motion for summary judgment.
The trial court correctly stated that to prevail on the suit for defamation the plaintiffs should first obtain a ruling that their contractual position is correct. Otherwise, a suit for defamation, based on denial of contractual liability, is premature. One of the requisites to an action in defamation is the falsity of the defamatory remarks. Conséquently, contractual liability needs to be established prior to instituting an action for defamation for denial of contractual *774 liability if such can be considered defamation at all.
We reverse the judgment of the trial court in granting the motion for summary judgment and the declaratory judgment as to the obligation for orthodontic payments and remand for further proceedings consistent with this opinion. All costs of this appeal are assessed against the appellees.
REVERSED AND REMANDED.

. While the name stated in the petition is "Phil-Iippi”, all other materials refer to him as “Phil-lippe” or "Philippi”.