**Rodney MITCHELL**

v.

**TRACER CONSTRUCTION CO., et al**

**No. CIV.A. 02–567–A.**

United States District Court,
M.D. Louisiana.

April 16, 2003.

Joanne S. Engum, Baton Rouge, LA, for Plaintiffs.

Amelia Williams Koch, Alexander M. McIntyre, Jr., Locke, Liddell & Sapp, New Orleans, LA, for Defendants.

## RULING

JOHN V. PARKER, District Judge.

This matter is before the court on a *sua sponte* inquiry into the subject matter jurisdiction of the court (doc. 14), and on a motion by defendants, Tracer Construction Company, Bill Mueller, and Paul Dubroc, for judgment on the pleadings and for summary judgment (doc. 6). Removal jurisdiction is allegedly based upon diversity of citizenship. There is no need for oral argument.

Plaintiff, a citizen of Louisiana, filed this civil action for damages in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on June 4, 2002. Plaintiff alleges damages suffered as a result of discrimination, harassment, and retaliation on the basis of race under Louisiana law, as well as slander, defamation, and intentional infliction of emotional distress.

Defendants, Tracer Construction Company, Bill Mueller and Paul Dubroc, filed a notice of removal with this court on June 13, 2002 and assert that this court has subject matter jurisdiction over this matter on the basis of complete diversity of citizenship, 28 U.S.C. § 1332. Defendant is a Delaware corporation with its principal place of business in Houston, Texas and defendants Mueller and Dubroc are both citizens of Louisiana, thus non-diverse in citizenship with plaintiff. Defendants assert that Bill Mueller and Paul Dubroc, the individual employee defendants, have been fraudulently joined in this matter in order to defeat diversity jurisdiction and that therefore their presence in this suit should be disregarded.

### *Subject Matter Jurisdiction*

The court *sua sponte* questioned subject matter jurisdiction on February 26, 2003, and ordered the parties to submit memoranda on the issue.

To establish "fraudulent joinder", a removing defendant must show that there is no possibility that the plaintiff could establish a cause of action against

the non-diverse defendant in state court.[1] If a plaintiff has any possibility of recovery under state law against the party whose joinder is questioned, then the joinder is not fraudulent in fact or law.[2] The court does not determine whether a plaintiff will actually or even probably prevail on the merits of the claim, but looks only for a possibility that the plaintiff might do so.[3] The court must evaluate all of the factual allegations of the state court petition in the light most favorable to the plaintiff.[4] The court may "pierce" the pleadings and consider summary judgment-type evidence but all disputed questions of fact and all ambiguities in the controlling state law must be resolved in favor of the plaintiff.[5]

The petition for damages filed in the state court alleges the following, in part:

"During the duration of his employment with Tracer Construction Company, the petitioner he [sic] was continuously subjected to racial slurs, comments and epithets, such as 'nigger', 'niggers are in the front and whites in the back', 'you'd better get this nigger before I hurt him', 'when did Tracer hire so many niggers', and 'my big black nigger'. In July 1999, Bill Mueller, and Paul Dubroc were told to stop using this terminology, however, the comments continued. In addition, Bill Mueller response [sic] to requests to stop using these slurs were [sic], 'I was here before you and I'm gonna be here when you're gone,' and 'I didn't promise you anything when you signed on with this company, so at any time I can fire you and I don't have to have a reason' and 'I'll say what I want to and if you don't like the way I run my company, you can get on away from here.' . . .

## IX.

The following non-exclusive acts and/or omissions of Mr. Bill Mueller, and Mr. Paul Dubroc, were a cause-in-fact, as well as a legal cause, of the injuries sustained by petitioner:

A. Knowingly making false statements about the petitioner, which were communicated to third persons;

B. Damage to reputation;

C. Injury to occupation; . . .

## X.

Defendants, Mr. Bill Mueller, and Mr. Paul Dubroc, at all times herein relevant, have defamed the character of the petitioner by speaking defamatory words that were communicated to a person other than the one defamed, and were false, with actual or implied malice . . . ."

In addition, plaintiff alleges that the individual employee defendants are liable for harassment and intentional infliction of emotional distress.

██ The court has previously noted that Louisiana's antidiscrimination law provides no cause of action against individual employees, only against employers.[6]

Defendants argue that plaintiff has no cause of action against Bill Mueller and Paul Dubroc for either defamation or slander. Defendants argue that the state court petition does not identify any defam-

---

1. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981).

2. *Burden v. General Dynamics Corp.*, 60 F.3d 213 (5th Cir.1995).

3. *Burden*, 60 F.3d at 216.

4. *B., Inc.*, 663 F.2d at 549.

5. *Burden*, 60 F.3d at 216.

6. La. R.S. 23:301 *et seq.*

atory words, and no specific acts of publication are alleged. Defendants argue that the statement that plaintiff was terminated for not being tied off in accordance with company rules is a true statement. Further, defendants argue that neither Mueller nor Dubroc uttered the statement, and that the statement was made to plaintiff and therefore was not "published". Defendants argue that the insulting and offensive comments made in the presence of plaintiff do not rise to the level of malice sufficient to sustain a claim for defamation.

Defendants further argue that plaintiff has no cause of action against Bill Mueller and Paul Dubroc for intentional infliction of emotional distress. Defendants argue that being repeatedly exposed to an offensive term does not amount to "outrageous conduct" for a claim of intentional infliction of emotional distress.

 Under Louisiana law, to prevail on a defamation claim, a plaintiff must prove that the defendant maliciously published a false defamatory message which caused injury.[7] A successful defamation claimant must prove each of the five elements: 1) defamatory words; 2) falsity; 3) malice; 4) publication; and 5) injury.[8] Statements between employees, made within the course and scope of their employment, are not considered publicized for purposes of a defamation claim.[9]

 Plaintiff has alleged the requisite elements of a claim for defamation: "Mr. Bill Mueller, and Mr. Paul Dubroc, at all times herein relevant, have defamed the character of the petitioner by speaking defamatory words that were communicated to a person other than the one defamed, and were false, with actual or implied malice..." However, plaintiff has not identified specific defamatory words in the state court petition, nor has plaintiff alleged any other material facts pertaining to the defamation claim. Plaintiff has merely alleged the elements. There are no facts to take as true. Without facts, there can be no possibility of recovery against the individual defendants.

 For the claim of intentional infliction of emotional distress, plaintiff must prove 1) that the conduct of the defendant was extreme and outrageous; 2) that the emotional distress of the plaintiff was severe; and 3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[10] The Louisiana Supreme Court has stated that the conduct must be

"...so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."[11]

Cases arising in the workplace are limited to situations where the distress is "more than a reasonable person could be expected to endure" and the offending conduct is "intended or calculated to cause severe emotional distress."[12]

---

7. *Rouly v. Enserch*, 835 F.2d 1127, 1129 (5th Cir.1988).

8. *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So.2d 196, 198 (La.1980).

9. *Cangelosi*, 390 So.2d at 198.

10. *White v. Monsanto Co.*, 585 So.2d 1205 (La.1991).

11. *White*, 585 So.2d at 1209.

12. *Nicholas v. Allstate Ins. Co.*, No. 95–C–2522 (La.8/31/00) 765 So.2d 1017, 1026.

■ Plaintiff alleges that he was subjected to racial slurs and badgering by the individual defendants. The court finds that the allegations in this case, considered in the light most favorable to plaintiff, simply do not rise to the high level of "extreme and outrageous" conduct, over a sufficient period of time, to constitute a tort under existing Louisiana law.

■ The court thus finds that there is no possibility of recovery under Louisiana law against Bill Mueller and Paul Dubroc in this matter. The individual defendants are fraudulently joined in this matter and therefore their presence in this litigation will be ignored.

### Motion for Judgment on the Pleadings and for Summary Judgment

#### A. *The nondiverse defendants*

The motion for judgment on the pleadings and for summary judgment (doc. 6) is filed on behalf of all defendants, including Mueller and Dubroc who are not diverse in citizenship with plaintiff. The court has just determined that they have been "fraudulently joined" for the purpose of defeating federal subject matter jurisdiction, yet the defendants demand that the court exercise federal subject matter over the claims against them.

Article III, Section 2 of the Constitution determines the reach of federal subject matter jurisdiction and neither the Congress nor any court can modify or extend that jurisdiction.

Section 2 provides, in pertinent part: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, ...—to Controversies ... between Citizens of different States, - ...."

There is no dispute that Mueller and Dubroc and plaintiff, Mitchell, are all citizens of the same state—Louisiana. Since plaintiff and these defendants are not citizens of different states and there is no federal question involved in this litigation any ruling by this court on the claims asserted against them would be juridical action beyond the jurisdiction of the court and thus null and void.[13]

Counsel for defendants have suggested that although Mueller and Dubroc are not diverse in citizenship with plaintiff the court may nevertheless assert jurisdiction over the claims against them by granting summary judgment in their favor. Counsel have submitted some jurisprudential authority in support of that notion. The court refers the parties to the opinion in *Jewell v. Dudley L. Moore Ins. Inc.*, 872 F.Supp. 1517 (M.D.La.1995) for a discussion as to why, under the jurisdictional grant of the Constitution, this cannot be:

> "If the non-diverse party *has not* been fraudulently joined, the court must remand the case. If the non-diverse party *has* been fraudulently joined, the proper procedure is to simply *ignore* his presence; he is no longer considered a party defendant ..." (citation omitted; emphasis in original) 872 F.Supp. at 1520.

This court declines to render a ruling that would be void for lack of subject matter jurisdiction.

#### B. *The diverse defendant*

Tracer Construction Company argues that it is entitled to judgment on the pleadings as to plaintiff's claims for defamation and intentional infliction of emotional distress on the grounds that plaintiff can prove no set of facts in support of his

---

13. *U.S. v. 119.67 Acres,* 663 F.2d 1328 (5th Cir.1981); *Pacurar v. Hernly,* 611 F.2d 179 (7th Cir.1979).

claims which would entitle him to relief. Defendant further claims that it is entitled to summary judgment on plaintiff's discrimination claims.

The court has previously held that plaintiff has no possibility of recovery for his claims of defamation and intentional infliction of emotional distress against the individual defendants. For the same reasons, the court finds that Tracer Construction Company is entitled to judgment on the pleadings as to plaintiff's claims for defamation and intentional infliction of emotional distress. The court will now examine plaintiff's claim of race discrimination.

*Undisputed Facts*

The following facts are taken from the statement of uncontested facts submitted in support of the motion for summary judgment in accordance with LR56.1 and LR56.2. Since plaintiff has failed to make any response to the statement of undisputed facts submitted by defendant, the following facts are deemed admitted for purposes of this motion under LR56.2.

1. Tracer Construction Company ("Tracer") has long had a company safety policy whereby all laborers working four (4) or more feet above the ground (measured from the feet of the worker) must wear full body harnesses and double shock-absorbing lanyards, and be attached to a beam or some other anchoring material. This is known as Tracer's strict 100% "Tie–Off Policy."

2. Specifically, the policy, which is reproduced in the company manual given to all employees at the inception of their employment with Tracer, provides:

 Due to the probability of a severe injury or possible death occurring from a fall, disciplinary actions will be taken on first time offenders. Actions taken will be termination of employ-

ment with no re-hire. No exceptions will be made.

3. On June 4, 2001, Rosa Pichardo, an employee with Tracer's safety department, observed plaintiff violating the 100% Tie–Off Policy.

4. After an investigation, Allen Hartman, the Supervisor of the jobsite, made the decision to terminate plaintiff's employment for violation of the company's 100% Tie–Off Policy.

5. Plaintiff was terminated on June 4, 2001 for violating the 100% Tie–Off Policy.

6. As reflected in safety task assignment instructions and check lists signed by plaintiff acknowledging the 100% Tie–Off Policy, and his presence at weekly safety meetings where the policy was discussed, plaintiff was informed and aware of the 100% Tie–Off Policy as well as the consequences of violating the policy.

7. On June 4, 2001, the date of plaintiff's discharge, he was present at a meeting discussing the policy.

8. Tracer is strict and uniform in its enforcement of the 100% Tie–Off Policy. Since August of 2000, Tracer has terminated ten employees for violating the 100% Tie–Off Policy: three of the ten employees were white, three were Hispanic and four, including plaintiff, were black.

9. Since institution of the 100% Tie–Off Policy, there have been no instances of individuals who have not been immediately discharged for violation of the policy.

*Argument*

Tracer first argues that the evidence demonstrates that the 100% Tie–Off Policy was applied consistently and broadly to persons of all races. Defendant submits the affidavit of its Louisiana Division Man-

ager, Paul Thomas, who attests that the Tie–Off Policy is consistently applied to persons of every race. Thomas attests that ten employees have been terminated since August 2000: three Hispanic, three Caucasian, and four African–American. Thomas further attests that, since the institution of the Tie–Off Policy, there have been no instances of individuals who have not been immediately discharged for violating the policy.

Tracer also argues that plaintiff cannot show that he suffered a hostile work environment. Tracer argues that, aside from a few incidents of name-calling, there is no evidence that any alleged harassment affected plaintiff's employment.

Finally, Tracer argues that plaintiff cannot demonstrate that he suffered retaliation. Tracer argues that plaintiff cannot show that his conversation with a former employee is a protected activity under the civil rights laws.

In response, plaintiff argues that he was subjected to racial slurs, epithets, and comments during his employment. Plaintiff argues that he suffered retaliation for providing information to another terminated employee. Plaintiff argues that he was in fact tied-off in compliance with company policy, and that the Tie–Off Policy was not consistently applied. Plaintiff has submitted affidavits of two former Tracer employees who attest that the policy was not consistently applied. Plaintiff further submits two written racial jokes that were circulated at Tracer. Plaintiff further argues that he was subjected to a hostile work environment because the racial comments and jokes continued over a period of time.

*Law and Discussion*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [14] The party seeking summary judgment bears the initial burden of asserting the basis of the motion and demonstrating the absence of a genuine issue of material fact; he need not negate the nonmovant's claim. [15] Substantive law guides the determination as to which facts are material, and because the issues of material fact must be genuine, the presence of some alleged factual disputes, depending on what they are, will not necessarily defeat the motion. [16] The movant may discharge his burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." [17]

Once the movant discharges his burden, the nonmovant must highlight specific facts which demonstrate that there is a genuine issue of material fact, but he may not rely upon allegations or denials of his pleading. [18] The nonmovant's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." [19] There is no genuine issue

**14.** Fed.R.Civ.P. 56(c).

**15.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

**16.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91

L.Ed.2d 202 (1986); *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir.1993).

**17.** *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

**18.** Fed.R.Civ.P 56(e); *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992).

**19.** *Little,* 37 F.3d at 1075 (citations omitted).

where the record could not lead a rational trier of fact to find for the nonmoving party.[20] Stated differently, the nonmovant "need only present evidence from which a jury might return a verdict in his favor." [21] Only then will a genuine issue be considered to exist. The court must resolve all factual inferences in favor of the nonmoving party, but only when the parties have each submitted contradictory factual evidence.[22]

In sum, summary judgment is mandated if the nonmovant fails to sufficiently establish the existence of an essential element of his case on which he bears the burden of proof, thereby dispensing with a genuine issue, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." [23]

■■■ The basis for federal subject matter jurisdiction in this case is diversity of citizenship, and as such the court must apply state substantive law under *Erie R.R. v. Tompkins.*[24]

■■■ In interpreting Louisiana's anti-discrimination law, Louisiana courts look to federal employment discrimination law for guidance and apply the burden-shifting analysis of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*[25] A plaintiff must first establish a prima facie case which gives rise to an inference that the employer unlawfully discriminated against the employee.[26] A prima facie case is established if plaintiff shows that he was within a protected class; that he was qualified for the position he held; that he was discharged, and that he was replaced by someone outside the protected class, or is otherwise able to show that his discharge was because of his race.[27]

■■■ If plaintiff succeeds in establishing a prima facie case, the employer must then articulate some legitimate non-discriminatory reason for its adverse employment decision concerning the plaintiff.[28] The inference of discrimination raised by the prima facie case disappears if the employer satisfies its burden of production.[29] The focus then shifts to the ultimate question of whether the defendant intentionally discriminated against the

**20.** *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Amoco Prod. Co. v. Horwell Energy, Inc.,* 969 F.2d 146, 148 (5th Cir.1992).

**21.** *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514.

**22.** *Little,* 37 F.3d at 1075.

**23.** *Celotex,* 477 U.S. at 322–323, 106 S.Ct. at 2552; *see Little,* 37 F.3d at 1075.

**24.** 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding that a federal court sitting in a diversity case in which there exists no applicable substantive federal statutory or constitutional law must apply relevant state substantive laws).

The court notes that plaintiff mentions Title VII for the first time in this litigation in his brief on the issue of fraudulent joinder. The reference does not appear to assert a claim under Title VII, but merely serves as a comparison for the purposes of plaintiff's argument that individual employees may be liable for discrimination. The court has previously rejected this argument.

**25.** *Nichols v. Lewis Grocer,* 138 F.3d 563, 565 (5th Cir.1998).

**26.** *Grimes v. Texas Dept. of Mental Health and Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996).

**27.** *See, Nieto v. L. & H. Packing, Co.,* 108 F.3d 621, 624 n. 7 (5th Cir.1997) (cases cited therein).

**28.** *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981).

**29.** *Id.*

plaintiff.[30] Plaintiff may avoid summary judgment only if the evidence taken as a whole creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer, and creates a reasonable inference that an unlawful motive was a motivating factor in the adverse employment actions taken against the plaintiff.[31] Plaintiff cannot succeed merely by proving that the defendant's proffered reason is pretextual. A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason.[32]

■ In the instant matter, defendant has submitted the affidavits of its Louisiana Division Manager, Paul Thomas who attests that, since the inception of the 100% Tie–Off Policy, there have been no instances of individuals who have not been immediately discharged for violation of the policy.[33] Thomas attests that plaintiff's employment with Tracer was terminated following a violation of the policy on June 4, 2001.[34] Thomas further attests that the policy is consistently applied to persons of every race.[35]

Defendant has also submitted the affidavit of Allen Hartman, plaintiff's former Superintendent, who attests that, to his knowledge, every Tracer employee who violates the 100% Tie–Off Policy is terminated.[36] Hartman further attests that, based on the clear mandate of the policy, when plaintiff admitted to Hartman that he had violated the policy, Hartman made the decision to terminate plaintiff's employment.[37]

Plaintiff alleges that he was terminated because of his race. Plaintiff alleges that the stated reason for his termination, i.e., noncompliance with the 100% Tie–Off Policy, is a pretext for race discrimination. Plaintiff has submitted the affidavits of two former Tracer employees who attest that it was not the common practice of Tracer to terminate employees for noncompliance with the policy.

The affidavits, however, do not appear to be based on personal knowledge in this regard. The affidavits do not state how the information regarding policy compliance or noncompliance was obtained. The affiants do not appear to be part of or formerly part of management or persons with knowledge of information contained in employee records. The information contained in the affidavits is nothing more than employee gossip. Further, plaintiff has not submitted a statement of disputed facts and therefore the facts submitted by Tracer as undisputed must be taken as true for purposes of this motion, including the fact that the policy was consistently and strictly applied. Tracer further notes to the court that the affiants were not employed by Tracer during the time period .addressed. The court finds that the affidavits are not proper summary judgment evidence and do not refute the evidence submitted by defendant that plaintiff's employment was terminated for failure to comply with the

---

**30.** *Grimes,* 102 F.3d at 140.

**31.** *Walton v. Bisco Industries, Inc.,* 119 F.3d 368, 370 (5th Cir.1997), *citing, Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir. 1996) (*en banc* ).

**32.** Id.

**33.** Defendant's Exhibit 2, Affidavit of Paul Thomas.

**34.** Defendant's Exhibit 2, Affidavit of Paul Thomas.

**35.** Defendant's Exhibit 2, Affidavit of Paul Thomas.

**36.** Defendant's Exhibit 3, Affidavit of Allen Hartman.

**37.** Defendant's Exhibit 3, Affidavit of Allen Hartman.

100% Tie–Off Policy and that the policy was consistently applied. Plaintiff has failed to sustain the ultimate burden of demonstrating a reasonable inference that an unlawful motive was a motivating factor in the adverse employment actions taken against the plaintiff.

■■■■■ Turning to plaintiff's hostile work environment claim, a plaintiff may establish a violation based on race discrimination creating a hostile work environment by showing: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[38] For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.[39] The following circumstances must be considered in determining whether a workplace constitutes a hostile work environment: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.[40] The mere utterance of an offensive comment or remark which hurts an employee's feelings is not sufficient to affect the conditions of employment. Simple teasing, offhand comments, and isolated incidents, unless they are extremely serious, are not sufficient to affect the terms, conditions or privileges of employment.[41]

In the instant matter, plaintiff alleges he was continuously subjected to racial comments and jokes by supervisors and co-workers throughout his employment with Tracer. Plaintiff alleges that the comments continued despite requests to cease.

■■■■■ There is no question that plaintiff belongs to a protected group and was subjected to unwelcome harassment based on race. However, as for the fourth element of plaintiff's claim, plaintiff has failed to demonstrate that the harassment complained of affected a term, condition, or privilege of employment. Plaintiff has not alleged or argued that the conduct unreasonably interfered with his work performance. Plaintiff was terminated for failing to follow company policy, and has not shown that this failure was the result of the alleged harassment in any manner.

■■■■■ With regard to plaintiff's retaliation claim, plaintiff alleges that he was terminated for providing information to another terminated employee. In Title VII retaliation cases, a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action.[42] An employee has

38. *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir.2002), *citing Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 353 (5th Cir. 2001).

39. *Ramsey,* 286 F.3d at 268, *citing Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370–371, 126 L.Ed.2d 295 (1993), *and Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

40. *Ramsey,* 286 F.3d at 268, *citing Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir.2000), *and Harris,* 510 U.S. at 23, 114 S.Ct. at 370–371.

41. *Meritor,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).

42. *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463 (5th Cir.2002).

engaged in activity protected by Title VII if he has either (1) opposed any practice made an unlawful employment practice by Title VII; or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.[43]

██ Plaintiff has not identified any facts to support his allegations. Plaintiff has not identified the information provided to the terminated employee, nor has plaintiff provided the name of the employee. Plaintiff has produced no factual evidence in support of the bare allegations of the petition. The undisputed evidence submitted by defendant shows that plaintiff was terminated for failing to abide by company policy. Although plaintiff denies that he was in violation of the 100% Tie–Off Policy, this assertion alone is insufficient to defeat the properly supported summary judgment motion before the court.

Accordingly, for the reasons assigned, the motion by defendant, Tracer Construction Company for judgment on the pleadings and for summary judgment (doc. 6) is hereby **GRANTED** and this matter shall be **DISMISSED**.

---

43. *Long,* 88 F.3d at 304, *citing* 42 U.S.C. § 2000e–3(a).