## Nick MAGGIO, et al.

v.

## LIZTECH JEWELRY, et al.

### Civil Action No. 95–0171.

United States District Court, E.D. Louisiana.

Jan. 9, 1996.

---

**4.** *See* U.S.S.G. § 1B1.3.

S. Michael Cashio, Kenner, LA, for Plaintiffs.

Stephen R. Doody, Michael A. Berenson, New Orleans, LA, for Defendants.

### ORDER AND REASONS

MENTZ, District Judge.

In this litigation, the plaintiffs, Nick Maggio and Bentley Lovelace (d/b/a BentNicks) (collectively referred to as BentNicks) brought a suit for defamation against the defendants, Liztech Jewelry, Jill Elizabeth (a/k/a Jill Elizabeth MacLaren) (collectively referred to as Liztech), and Donegal Mutual Insurance Company. Liztech filed a counterclaim for copyright infringement. The court addresses here two motions for summary judgment filed by Liztech—one, for judgment dismissing BentNicks' defamation

suit, and the other, for judgment in favor of Liztech on its copyright infringement claim. For the reasons stated below, the motion on the defamation claim is granted, and the motion on the copyright infringement claim is denied.

## I. FACTS

Both Liztech and BentNicks operate businesses designing, manufacturing, and marketing decorative jewelry. Liztech operates in Pennsylvania; BentNicks operates in Louisiana.

In August, 1994, Liztech received a telephone call from an artist in New Orleans, Louisiana named David Babineaux, who stated that Maggio and Lovelace were using Liztech's catalogue to trace the silhouettes of the designs and to copy the embellishments on Liztech's jewelry. After Jill Elizabeth investigated this allegation and consulted with her attorney, two letters were written. The first letter, dated December 7, 1994, is from Liztech's attorney, David Lockwood, to BentNicks requesting that it cease and desist producing unauthorized versions of Liztech's jewelry. There is no allegation that Lockwood is liable for writing this letter, and he is not a party to this suit. The other letter, dated December 8, 1994, was written by Jill Elizabeth to eight persons selling BentNicks merchandise.[1]

In her letter, Jill Elizabeth stated in pertinent part: "All of my work is copyrighted and I believe that Bentnick [sic] is infringing upon that copyright." She referred to and enclosed Lockwood's letter, thereby adopting and publishing his words. Lockwood's enclosed letter refers to BentNicks' "unauthorized versions" and "blatant imitations" of eighteen "purloined" Liztech designs in "direct violation of federal law ... both Copyright and Trademark." Lockwood's letter further states that "[t]he Liztech designs are registered and properly filed with the United States Copyright Office. ... it is within our purview to bring actions against vendors and third persons who purchase these items for resale."

1. She also copied her letter to David Babineaux.

BentNicks claims that Liztech's letter, including the enclosed Lockwood letter, is defamatory. Liztech claims that BentNicks' works infringe 23 copyrights she holds on her works.

## II. DEFAMATION

■ Summary judgment on a defamation claim is proper if the non-moving party fails to present enough evidence on an essential element of his case to justify a jury in finding for that party. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Under Louisiana law, the following elements are prerequisites to recovery in an action for defamation: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. *Rouly v. Enserch Corp.,* 835 F.2d 1127, 1129 (5th Cir.1988); *Cangelosi v. Schwegmann Bros. Giant Super Markets,* 390 So.2d 196, 198 (La.1980).

■ Defamatory words are those that have a "tendency to deprive a person of the benefit of public confidence or to injure him in his occupation or reputation." *Manale v. City of New Orleans, Dept. of Police,* 673 F.2d 122, 125 (5th Cir.1982). Louisiana law distinguishes between words that have a defamatory implication and those that are defamatory per se without reference to their context, such as statements that amount to an accusation of a crime or similar conduct. If a statement is defamatory per se, malice and falsity are presumed, but not eliminated as requirements. The burden then shifts to the defendant to rebut the presumption. *Manale,* 673 F.2d at 125; *Redmond v. McCool,* 582 So.2d 262, 265 (La.App. 1st Cir. 1991); *Carter v. Catfish Cabin,* 316 So.2d 517, 522 (La.App.2d Cir.1975).

■ Applying these tests to the statements at issue, the court is unable to find that the communication is without defamatory meaning. The letters clearly would tend to damage BentNicks' business reputation with its customers. Indeed, the statements were designed to discourage BentNicks' cus-

tomers from dealing with it. Certain words in the lawyer's letter are defamatory per se to the extent they declare that BentNicks "purloined," a synonym for "theft," Liztech's designs in "direct violation" of copyright and trademark laws.

Defenses to defamation are truth or substantial truth and justification or privilege. *See Rouly,* 835 F.2d at 1130; *Carter,* 316 So.2d at 522; *Batiste v. Guiteau,* 413 So.2d 559, 563 (La.App. 1st Cir.), *writ denied,* 414 So.2d 776 (La.1982). Expressions of pure opinion cannot form the basis for a defamation action because they are neither true nor false. *Mashburn v. Collin,* 355 So.2d 879, 885 (La.1977). Jill Elizabeth's statement that she "believes" BentNicks is infringing upon her copyright is clearly an expression of an opinion. It may be actionable however if it expressly stated or implied the existence of underlying facts, and the underlying factual assertions were false, defamatory, and made with actual malice. *Bussie v. Lowenthal,* 535 So.2d 378, 381–82 (La.1988).

Jill Elizabeth's opinion is not a purely subjective statement because it is accompanied by the implication of underlying facts as well as the express facts stated in the enclosed letter from her lawyer. Under the circumstances of this case, her opinion cannot be distinguished from the facts asserted in her lawyer's accompanying letter. As discussed above, those facts stated in the lawyer's letter are defamatory per se in that they declare the plaintiffs to have violated federal laws. In addition, certain of the underlying facts are false to the extent they suggest that all, or least 18, of Liztech's works held registered copyrights and trademarks.[2] The defamatory words are nevertheless not actionable because the statements were not made with knowing or reckless falsity, i.e. malice.

A statement has a qualified or conditional privilege if it was made in good faith on any subject matter in which the communicating person has an interest or about which he has a duty to a person having a corresponding interest or duty. *White v. Baker Manor Nursing Home, Inc.,* 400 So.2d 1168, 1169 (La.App. 1st Cir.), *writ denied,* 403 So.2d 68 (La.1981); *Toomer v. Breaux,* 146 So.2d 723 (La.App. 3d Cir.1962). The qualified privilege "arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicator will be held liable in damages if the good faith communication later proves to be untrue or inaccurate." *Ward v. Sears, Roebuck & Co.,* 339 So.2d 1255, 1261 (La.App. 1st Cir.1976) (citing *Toomer,* 146 So.2d at 725).

"Good faith" refers to a statement made in the honest belief that it is a correct statement and with reasonable grounds for believing it to be true. *Elmer v. Coplin,* 485 So.2d 171, 177 (La.App.2d Cir.), *writ denied,* 489 So.2d 246 (La.1986). Good faith does not mean lack of hostility or ill feeling. *Rouly,* 835 F.2d at 1130.

There is no genuine issue of material fact regarding the circumstances in which the statements were made. Liztech was advised by David Babineaux that BentNicks was copying Liztech designs. Prior to issuing any communications, Liztech investigated the charge by obtaining a catalogue of BentNicks' work as well as actual copies of its work. With her lawyer, Jill Elizabeth compared BentNicks' designs to her own work. After consultation and advice of her attorney, Jill Elizabeth concluded that eighteen of BentNicks' works infringed her copyrights. At her request, Lockwood sent the letter

---

2. Jill Elizabeth's letter states: "All of my work is copyrighted." Lockwood's letter states: "The Liztech designs are registered and properly filed with the United States Copyright Office. ... We are presently aware that eighteen (18) images have been purloined ... all of which represent violations under the Federal law, i.e., both Copyright and Trademark."

At the time of writing these letters, only twelve of Liztech's works held registered copyrights. Prior to filing the counterclaim for copyright infringement, Liztech registered ten more works. Thereafter, one more work was registered, so that Liztech now holds twenty-three registered copyrights. There is no evidence or argument before the court that Liztech holds any trademarks.

dated December 7, 1994, to Maggio and Lovelace demanding that they cease and desist from violating her copyrights. Jill Elizabeth then sent her letter dated December 8, 1994, with Lockwood's letter enclosed, to eight persons she knew to be carrying, selling, and/or handling the BentNicks' merchandise that she believed violated her copyrights. She also sent the same material to David Babineaux.

It is undisputed that Liztech had an interest in investigating the allegation that Bent-Nicks was copying Jill Elizabeth's designs. Liztech has come forward with evidence to show that Jill Elizabeth in fact investigated and confirmed her beliefs before communicating them. The record shows that Jill Elizabeth had reason to suspect a copyright violation. Her investigation revealed that at least one seller was confused by the designs. The fact that other persons may not be confused does not mean that she was without basis in her belief.[3] Once her investigation confirmed the charges, at least in her mind, her lawyer's mind, and at least one of the sellers, she had a reasonable interest in communicating her belief to the third party sellers, and they likewise had an interest in learning about her concerns in order to avoid liability for selling infringing work. The letter was written to uphold a legitimate business interest. She also had a reasonable interest in copying her letter to David Babineaux, and he had a corresponding interest, by virtue of his role in originally informing her about the possible copyright infringement. The statements contained in the letter were limited in scope to that business purpose and published to the proper parties only. Under these circumstances, Liztech has successfully rebutted the presumption of malice by showing the reasonableness of her actions and words.

The fact that the letters falsely suggest that Liztech had registered copyrights on eighteen rather than twelve works, does not create a genuine issue of material fact as to Liztech's good faith. Whether Liztech had copyrights on all or some of the work has no bearing on the issue of good faith in this case. First, the number of registered copyrights is not the subject of the allegedly defamatory communication. Second, at the time the letters were written, at least twelve works had registered copyrights which Liztech was entitled to protect. Third, the misstatement as to the number of registered works does not override the fact that Liztech had a reasonable basis to believe that 18 of its works were being copied. *See Redmond,* 582 So.2d at 265–66 (where defendant, who made statement both false and defamatory per se, successfully rebutted the presumption of malice by showing reasonable basis for statement). The Copyright Act affords protection to every work as of the moment of creation. *See* 17 U.S.C. § 302(a); *Hays v. Sony Corp. of America,* 847 F.2d 412, 415 (7th Cir.1988). Registration is not a prerequisite to copyright protection.[4] *TechniCAL, Inc. v. Allpax Products, Inc.,* 1990 WL 41924, at *6 (E.D.La. Mar. 28, 1990). Therefore, even if Liztech did not have all eighteen works registered at the time the letters were written, it had copyright ownership rights in the unregistered works. As a matter of law, Liztech was entitled to communicate what it reasonably believed to be a violation of its copyrights, regardless of whether the copyrights were registered. There is no genuine dispute that Liztech had a reasonable basis to make the statements regarding copyright infringement. There is no evidence on which reasonable minds could differ.

There being no genuine issues of material fact as to Liztech's good faith, and the interests of Liztech and the sellers in the commu-

**3.** BentNicks submitted the affidavits of three persons, whose capacity is unstated, each averring that there are no striking, confusing, or substantial similarities between the BentNicks works and the Liztech works. Liztech submitted the affidavit of the director of purchasing for the New Orleans Museum of Art Gift Shop who carries BentNicks merchandise. She stated that upon seeing Liztech's work at a trade show she found a substantial similarity between the two companies' works and was confused by the similarity.

**4.** It is however a prerequisite to filing suit for infringement. *TechniCAL, Inc. v. Allpax Products, Inc.,* 1990 WL 41924, at *6 (E.D.La. Mar. 28, 1990).

nications, Liztech's statements are protected by the qualified privilege. Accordingly, the communications are protected by the qualified privilege. *See Rouly,* 835 F.2d at 1133 (affirming summary judgment finding qualified privilege); *Trahan v. Bellsouth Telecommunications, Inc.,* 881 F.Supp. 1080 (W.D.La.), *aff'd,* 71 F.3d 876 (5th Cir.1995) (granting summary judgment on finding qualified privilege); *Reed v. R.C. Johnson,* 1995 WL 562299 (E.D.La.1995) (even if the statement at issue constitutes defamatory words, a qualified privilege would apply); *Redmond,* 582 So.2d at 265 (communication accusing plaintiff of "theft," even if defamatory per se, was protected by qualified privilege where communication was made in good faith); *Carter,* 316 So.2d at 522–23 (even if the communications were defamatory per se, they were entitled to a qualified privilege).

The defendants have shown that they are entitled to summary judgment dismissing BentNick's suit for defamation.

## III. COPYRIGHT INFRINGEMENT

Liztech claims that BentNicks infringed its copyrights on 23 jewelry pin designs, which are composed of two-dimensional, silhouettes of natural or symbolic subjects cut from polished chrome and embellished with copper wire and beading. The silhouettes are relatively simplistic designs of subjects taken from nature, such as frogs, turtles, and hummingbirds, mythical subjects like cupids, knights, and mermaids, and Southwestern Indian fetishes like firebirds.

■ To establish copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright; and (2) copying of the original copyrighted material by the defendant. *Szabo v. Errisson,* 68 F.3d 940, 942 (5th Cir.1995); *Norma Ribbon & Trimming, Inc.,* 51 F.3d 45, 47 (5th Cir.1995).

■ The validity of the copyrights on Liztech's works is not in dispute. Copying of work may be shown by direct or circumstantial evidence. Direct evidence of copying is rare. *Kepner–Tregoe, Inc. v. Leadership Software, Inc.,* 12 F.3d 527, 532 (5th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 82, 130 L.Ed.2d 35 (1994). Copying is generally es-

tablished by circumstantial evidence showing: (a) that the defendant had access to the copyrighted work; and (b) the substantial similarity of protectible material in the two works. *Norma Ribbon,* 51 F.3d at 47.

Although Liztech contends there is direct evidence of copying, the evidence is actually circumstantial. The evidence is that Maggio borrowed Liztech's catalogue from Babineaux, and that within "a matter of days" of returning it, Maggio presented to Babineaux several silhouettes drawn on paper which he asked Babineaux to cut-out for him. Maggio testified in deposition that he drew the silhouettes based on "inspiration" from the Liztech catalogue and a "compilation of different ideas." Babineaux thought that the silhouettes were "exactly the same" as Liztech's in the catalogue. He testified in deposition that when he commented on that to Maggio, Maggio responded, "who cares."

BentNicks disputes that Maggio "copied or traced" any of Liztech's designs. The evidence supporting BentNicks' position is Lovelace's affidavit which specifically denies that he or Maggio "copied or traced Liztech's designs in connection with our manufacture of certain jewelry work."

As there is no direct evidence of copying, Liztech must show access and substantial similarity. The parties do not dispute that Maggio had access to and used the catalogue which depicted the original Liztech works.

■ Whether a work is substantially similar is a question of fact, *Kepner–Tregoe,* 12 F.3d at 532, which this court can resolve on summary judgment only if there are no genuine issues of material fact. *See* Fed. R.Civ.P. 56. Regardless of whether Maggio traced or copied the silhouettes, or drew them from memory and inspiration, there is no genuine dispute that the silhouettes he drew are modelled from Liztech's work with only minor changes in shape and size. The court finds therefore, that the silhouettes are substantially similar to Liztech's silhouettes.

■ As the silhouettes of the pins are a strong aspect of the designs, and the silhouettes are strikingly similar, one might readily conclude that there has been copying. The silhouettes alone however, are not protected

expression. The scope of protection in this case is of the works in their entirety, or as Liztech states—the "combination of elements that together form a fanciful artistic expression of her idea." "A copyright ... bars use of the particular 'expression' of an idea in a copyrighted work but does not bar use of the 'idea' itself. Others are free to use the 'idea' so long as they do not plagiarize its 'expression.'" *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 741 (9th Cir.1971). Thus, the critical issue remaining is whether the BentNicks' works are substantially similar to the total expression of Liztech's work.

■■■■■ BentNicks incorrectly argues that Liztech's expression is not protected because the idea and the expression are merged. It is true that a copyright protects the expression of ideas, rather than the ideas themselves, *Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954); *Kepner–Tregoe*, 12 F.3d at 533, and consequently, copyright protection does not extend to a work whose idea is indistinguishable from its expression. *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 138 (5th Cir.1992) (when there is only one way to express an idea, copying the expression will not be barred). In this case, Liztech's idea of a jewelry pin as a two-dimensional, natural or symbolic form with applied wire and bead embellishments is not merged with the expression. The idea is clearly capable of different forms of expression. Here the expression is a combination of elements including the particular shape and size of the silhouettes, the unique combination of polished chrome and copper wire, beads, crystals, and other materials, and the distinctive and detailed application of those materials by wrapping wire and combinations of different types of beads to represent details like clothing, feathers, and physical features of the subjects.[5]

■■■ Although BentNicks' work is not an exact duplicate of Liztech's work, it cannot genuinely be disputed that there is an obvi- ous similarity between the works. The similarity goes beyond the primary concept to include the form of expression. The works depict the identical subject matter and share other common aspects of expression, such as the shape of the silhouettes and wrapping the figures with copper wire and beads. On this there is no genuine issue of material fact.

In addition to the similarities, there are variations which to a reasonable observer may not be insubstantial. The details of these differences are set forth in Lovelace's affidavit. Two differences that exist in all of the works is that BentNicks uses color-tinted mirrored lucite for the form of its silhouettes; whereas Liztech uses mirrored chrome, and BentNicks places colored cellophane foil on top of its silhouettes; whereas Liztech does not use that material. These two differences do serve to create a somewhat different visual impact and feel in each companies' work. While both companies' works are whimsical, the use of chrome and less color in Liztech's work has a more restrained effect, while the use of colored lucite and foil in BentNick's work has a more festive effect.

Other differences include BentNicks' use of different types and colors of beads, and the placement of the beads. Liztech's work sometimes attaches ornaments like compasses and cameos; whereas BentNick's work does not. BentNicks sometimes attaches feathers; whereas Liztech does not.

In addition, to Lovelace's affidavit, BentNicks submitted the affidavits of three persons who found no substantial similarity between BentNicks' works and Liztech's works.

■■■ While the analysis of substantial similarity involves objective comparisons, the decision in a close case such as this ultimately turns on a subjective determination of the total concept and feel of the products. *See Runstadler Studios, Inc. v. MCM Limited Partnership*, 768 F.Supp. 1292, 1296 (N.D.Ill. 1991). The court is unable to take this deter-

---

**5.** This case is therefore distinguishable from *Tabra, Inc. v. Treasures de Paradise Designs, Inc.*, No. C 90–0155 MHP, 1990 WL 126187 (N.D.Cal. Apr. 24, 1990) (the idea of primitive look jewelry is merged with the expression where there is no distinguishing arrangement of bone, stone, shell, and beads) and *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738 (9th Cir.1971) (the idea of a jeweled bee pin is merged with the expression where the pin is a lifelike representation of a natural creature and there was no unique or original arrangement of jewels).

mination from the jury. Under the facts of this case, the question of substantial similarity, although a close question, is one on which reasonable minds could differ.

Accordingly,

IT IS ORDERED that the Motion for Summary Judgment filed by the defendants, Liztech Jewelry, Jill Elizabeth, and Donegal Mutual Insurance Company, is **GRANTED,** dismissing the plaintiffs' suit for defamation.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by plaintiffs-in-counterclaim, Liztech Jewelry and Jill Elizabeth, on their counterclaim for copyright infringement is **DENIED.**