EDWIN A. LOMBARD, Judge.
 

 11Plaintiffs, Reverend Randy P. Roux (“Father Roux”), Anna F. Roux (“Mrs. Roux”), and Jill Micelle (“Ms. Micelle”), appeal from a summary judgment granted in favor of Defendants, Robert C. Pflueger, III, Paul Geohegan, Judith McCarthy Camhout, Daniel J. Laurent, Ricky Supre-an, and Reverend Gilmer J. Martin (“Father Martin”), dismissing Plaintiffs’ lawsuit. After a
 
 de novo
 
 review of the record in light of the applicable law and arguments of the parties, we affirm the judgment of the trial court.
 

 Relevant Facts and Procedural History
 

 This defamation and invasion of privacy lawsuit arises out of an administrative dispute between incoming and outgoing pastors and Finance Council members of St. John of the Cross Parish Church, a Catholic parish of the Archdiocese of New Orleans. Father Roux was pastor of St. John the Cross Parish from 1998 until January 8, 2001, when he was replaced by Father Martin. On taking over administration of the parish, Father Martin appointed Defendants as members of the Finance Council. Pursuant to their duties, the new Finance Council conducted a review of the parish finances which resulted in difficulties reconciling some financial records and locating some parish property.
 

 [2On October 13, 2001, after consulting with the Department of Financial Administrative Services of the Archdiocese, a letter, which was signed by each of the defendants, was sent to Monsignor Morin, the Vicar General of the Archdiocese. The letter outlined newly discovered financial irregularities and missing items of parish property, including the refurbishment of a tabernacle owned solely by Father Roux at parish expense, payment of Father Roux’s personal cellular phone bills, a discrepancy between money donated for rose bushes to be planted on the church grounds and the actual receipts for the rose bushes, missing church property (a piano, television, commercial stove, pool table, and an expensive piece of artwork that had been donated to the church), as well as the allegation of a salesman who told Mr. Geohegan that after Father Roux had some church floors newly tiled, Father Roux asked for two receipts for the supplies and a check in the amount of $500. After receiving the letter, Monsignor Morin contacted Father Roux and Ms. Micelle, Father Roux’s secretary and bookkeeper of the parish, with a request for explanations regarding the missing property and monetary concerns. .
 

 On January 25, 2001, Father Roux, Mrs. Roux, and Ms. Micelle filed this lawsuit alleging defamation and invasion of privacy. According to the original petition, Defendants failed to keep the contents of the letter to the Vicar General confidential by relaying some of the information to several parishioners of the church and accused Plaintiffs of theft and receipt of the above stolen property. By supplemental and amending petition, Plaintiffs alleged that Defendants defamed them by advising the congregation of Ms. Micelle’s mishandling of her bookkeeping duties and various other matters and invaded the Plaintiffs’ privacy by unreasonably intruding into their private affairs, particularly with respect to the |sallegation that Mrs. Roux’s possession of the framed artwork constituted receipt of stolen property.
 

 The trial court granted in part and denied in part Defendants’ Exception of Vagueness or Ambiguity on June 10, 2002,
 
 *594
 
 holding that the sole basis of the Plaintiffs’ claim was the letter sent to the Vicar General, and ordering Plaintiffs to amend their petition to clarify their invasion of privacy claim. On November 15, 2002, the trial judge granted Defendants’ Exception of Lack of Subject Matter Jurisdiction and deferred ruling on the Exception of No Cause of Action, but subsequently granted the Plaintiffs’ motion for new trial and reversed its ruling regarding subject matter jurisdiction.
 

 On June 23, 2008, each of the six Financial Council Defendants filed separate, yet virtually identical, motions for summary judgment, arguing that they were entitled to judgment as matter of law because Plaintiffs were unable to make a
 
 prim,a facie
 
 showing of all the required elements of either a defamation or invasion of privacy claim. After a hearing on the motions, the trial court rendered a single judgment in favor of Defendants on October 27, 2008. In so ruling, the trial court found that, as a matter of law, the letter in question was a conditionally privileged communication and did not rise to the level of an actionable invasion of privacy. This appeal followed.
 

 Arguments on Appeal
 

 On appeal, Plaintiffs argue that the trial court “erred in granting the motions for summary judgment based on a finding that the communication was conditionally privileged when the testimony clearly established genuine issues of material fact in the method of preparation and purported dissemination of information.” Plaintiffs further argue that the “law on privileged communication |4was improperly applied to the facts established in discovery, which requires the case to be remanded for trial.”
 

 Law and Discussion
 

 Summary Judgment
 

 Louisiana Code of civil Procedure article 966 governs the granting of a motion for summary judgment. It states that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La.Code Civ. Proc. art. 966(B). Of particular relevance to the instant case is La.Code Civ. Proc. art. 966(C)(2), which states:
 

 The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
 

 A “genuine issue” is a “triable issue,” or one on which reasonable persons could disagree.
 
 Champagne v. Ward,
 
 03-3211, p. 5 (La.1/19/05), 893 So.2d 773, 777. A “material fact” is a fact, the existence or non-existence of which may be essential to plaintiffs cause of action under the applicable theory of recovery.
 
 Id.
 
 La.Code Civ. Proc. art. 966(C)(2). Appellate courts review summary judgments
 
 d.e novo
 
 under the same criteria that govern the district court’s consideration of ^whether Summary Judgment is appropriate.
 
 Schroeder v. Bd. of Supervisors of La. State Univ.,
 
 591 So.2d 342, 345 (La.1991).
 

 
 *595
 

 Defamation
 

 Defamation is a tort involving an invasion of a person’s interest in his or her reputation and good name. The four elements necessary to establish a claim of defamation are: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.
 
 Kennedy v. Sheriff of E. Baton Rouge Parish,
 
 05-1418, p. 4 (La.7/10/06), 935 So.2d 669, 674;
 
 Badeaux v. Soutwest. Computer Bureau, Inc.,
 
 05-0612, pp. 8-9 (La.3/17/06), 929 So.2d 1211, 1218. A defamatory statement is one which “tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule.”
 
 Kennedy,
 
 05-1418, at 4, 935 So.2d at 674 (citing
 
 Costello v. Hardy,
 
 03-1146, p. 13 (La.1/21/04), 864 So.2d 129, 140).
 

 There are two categories of defamatory words: (1) those susceptible of a defamatory meaning; and (2) those that are defamatory
 
 per se
 
 (an express or implicit accusation of criminal conduct or words which by their very nature are injurious to someone’s personal or professional reputation).
 
 Kennedy,
 
 05-1418, at 5, 935 So.2d at 675. When the words at issue are not defamatory
 
 per se,
 
 the plaintiff must prove inflammatory meaning, publication, falsity, malice (fault), and injury, but when the words at issue or defamatory
 
 per se
 
 there is a rebuttable presumption that the words are false.
 
 Kennedy,
 
 05-1418 at 4, 935 So.2d at 674 (citing
 
 Costello,
 
 03-1146 at 12, 864 So.2d at 139). However, even when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded |fiif the defendant shows either that the statement was true, or that it was protected by a privilege.
 
 Doe v. Grant,
 
 01-0175, p. 9 (La.App. 4 Cir. 1/29/03), 839 So.2d 408, 416.
 

 In this case, Defendants argued, and the trial court ultimately found, that the statements made in the letter to the Vicar General are protected by a qualified or conditional privilege. The doctrine of privilege rests upon the notion that sometimes, as a matter of public policy, in order to encourage the free communication of views in certain defined instances, one is justified in communicating defamatory information to others without incurring liability.
 
 Toomer v. Breaux,
 
 146 So.2d 723, 725 (La.App. 3 Cir. 11/5/62). Privileged communications are divided into two general classes: (1) absolute; and (2) conditional or qualified.
 
 Madison v. Bolton,
 
 234 La. 997, 102 So.2d 433, 439 n. 7 (3/17/58). An absolute privilege exists in a limited number of situations, such as statements by judges and legislators in judicial and legislative proceedings.
 
 Id.
 
 A conditional privilege may be found in situations in which the person’s interest in making the statement is regarded as sufficiently important to justify some latitude for making mistakes so that publication of the defamatory statement is conditionally privileged.
 
 See, e.g., Trentacosta v. Beck,
 
 96-2388, p. 18 (La.10/21/97), 703 So.2d 552, 563. A conditional privilege is established when a statement is made in “good faith, on a matter in which the person making the statement had an interest or duty, and to another person with a corresponding interest or duty.”
 
 Melius v. Keiffer,
 
 07-0189, pp. 5-6 (La.App. 4 Cir. 3/12/08), 980 So.2d 167, 172 (citing
 
 Davis v. Benton,
 
 03-0851, p. 9 (La.App. 1 Cir. 2/23/04), 874 So.2d 185, 190). If reasonable grounds exist for believing a statement to be true, the statement is made in good faith.
 
 Id.
 

 |7A conditional privilege may be defeated, however, if the offended per
 
 *596
 
 son proves that privilege was abused. In the most recent Louisiana Supreme Court case discussing abuse of privilege in a defamation action,
 
 Kennedy v. Sheriff of E. Baton Rouge,
 
 05-1418, p. 22 (La.7/10/06), 935 So.2d 669, 684, the Court followed the Restatement (Second) of Torts in holding that the privilege is abused if the publisher (a) knows the matter to be false, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them.
 

 Plaintiffs argue that Defendants acted with malice and in bad faith, thereby abusing the privilege in several regards, including failing to follow proper protocol in performing their duties, disclosing the purportedly privileged communication to third parties, and failing to research and communicate the matter in a manner so as not to defame Plaintiffs. Plaintiffs claim that based on the Defendants’ backgrounds, as professionals and business persons with experience in accounting, Defendants acted negligently in failing to adequately investigate the alleged discrepancies before sending the letter, and that their lack of good faith must be examined at a trial. Plaintiffs offer letters from various parishioners wherein the writers state that they overheard others talking about the alleged financial discrepancies and missing church property. Plaintiffs further offer an affidavit signed by Ms. Mary Monti, a parishioner of the church, stating that [Defendant] Mr. Suprean told her “I don’t want this man to be pastor in any church”
 
 [1]
 
 as evidence that Defendants abused the privilege by sharing the allegedly privileged information with third parties. According to Plaintiffs, Defendants’ actions | sconstituted an intentional and systematic destruction of three individuals who were guilty of nothing.
 

 Despite Plaintiffs arguments to the contrary, there is no genuine issue of material fact in dispute in this case. The circumstances surrounding this matter indicate that a conditional privilege cleaiiy existed with regard to the communication at issue. The facts establish that the Defendants, all members of the Finance Council, reported a matter affecting the public interest — discrepancies in the parish’s financial records and missing church property-to the Vicar General, who had the duty to investigate and act on the Finance Council’s concerns. Once this privilege was established, it became incumbent on the Plaintiffs to come forward with rebuttal evidence establishing that Defendants abused the privilege. Plaintiffs did not submit any admissible evidence to raise a genuine issue of material fact that Defendants had knowledge of falsity of any defamatory words or displayed a reckless disregard for the truth of the statements made in the letter to the Vicar General. Plaintiffs use their personal beliefs and feelings to support their assertions that Defendants acted in alleged bad faith. These uncorroborated assertions are inadequate to support a defamation claim under the circumstances.
 
 See Estiverne v. Times-Picayune, L.L.C.,
 
 06-0571 (La.App. 4 Cir. 12/20/06), 950 So.2d 858.
 

 Moreover, the unsworn letters from various members of the parish are likewise insufficient to create a genuine issue of material fact. A document which is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining
 
 *597
 
 whether or not there remain genuine issues of material fact.
 
 Harvey v. Francis,
 
 00-1268, p. 3 n. 1 (La.App. 4 cir. 3/21/01), 785 So.2d 893, 896 n. 1 (citing,
 
 Herod v. American Service Life Ins. Co.,
 
 554 So.2d 783, 785 (La.App. 5 Cir. 12/13/89)). Thus, statements made in letters rather than by affidavits have no evidentiary value.
 
 See Powers v. Tucker,
 
 29,190, p. 9 (La.App. 2 Cir. 2/26/97), 690 So.2d 922, 926. Moreover, Ms. Monti’s broad statement in her affidavit that Mr. Suprean told her that he does not want Father Roux to be pastor of any church is neither defamatory nor does it support the contention that Defendants abused the privilege. Rather, it reflects nothing more than an opinion expressed by Mr. Suprean.
 

 Accordingly, the trial court was correct in finding, as a matter of law, that Defendants’ letter to the Vicar General was a privileged communication and that, in this case, there has been no evidence presented that any member of the Finance Council was not acting in good faith, i.e. outside the confines of their duties as overseers of the parish finances. Therefore, we affirm the trial court’s judgment dismissing Plaintiffs’ defamation claims against Defendants.
 

 Invasion of Privacy
 

 As previously mentioned, Plaintiffs also brought forth a claim for invasion of privacy against Defendants. In paragraph 8 of Plaintiffs’ First Supplemental and Amended Petition, Plaintiffs allege that the defendants
 

 ... invaded the privacy of plaintiffs in their allegations by unreasonably intruding into the plaintiffs’ private affairs of which they had no purpose being involved. In paragraph 6 of Exhibit “A” [the letter to the Vicar General] the defendants specifically allege that Anna F. Roux received stolen property of a picture from her son, Reverend Roux
 

 [[Image here]]
 

 The actual words alleged to constitute an invasion of privacy are:
 

 A parishioner donated an expensively framed picture of Our Lady of Perpetual Help to the church. The church now possesses a copy of the picture in a cheaper frame. It is believed that the donated picture was given to Fr. Roux’s mother as a birthday present by her son.
 

 110Louisiana law recognizes a cause of action for invasion of privacy. Louisiana courts have defined the right of privacy as “the ‘right to be let alone’ or ‘the right to an “inviolate personality.” ’ ”
 
 Landrum v. Bd. Of Comm’rs of Orleans Levee Dist.,
 
 95-1591, p. 14 (La.App. 4 Cir. 11/27/96), 685 So.2d 382, 392. This right embraces four different interests, each of which may be invaded in a distinct manner: (1) the appropriation of an individual’s name or likeness for the use or benefit of the defendant; (2) an unreasonable intrusion by the defendant upon the plaintiffs physical solitude or seclusion; (3) publicity that unreasonably places the plaintiff in a false light before the public; and (4) unreasonable public disclosures of embarrassing private facts.
 
 Jaubert v. Crowley Post-Signal, Inc.,
 
 375 So.2d 1386, 1388 (La.1979);
 
 Melder v. Sears, Roebuck and Co.,
 
 98-0939, p. 13 (La.App. 4 Cir. 3/31/99), 731 So.2d 991, 1000.
 

 Violation of the right of privacy is actionable only when a defendant’s conduct is unreasonable and seriously interferes with another’s privacy interest.
 
 Jaubert,
 
 375 So.2d at 1388-1389. It is not necessary to prove that the defendant acted with malicious intent.
 
 Id.
 
 A determination of whether the defendant’s actions were reasonable is made by balancing the interests of the plaintiff in protecting his privacy from serious invasions with the
 
 *598
 
 defendant’s interest in pursuing his course of conduct.
 
 Jaubert,
 
 375 So.2d at 1389. A defendant’s conduct is reasonable and non-actionable, even though it may slightly invade plaintiffs privacy, if the action is properly authorized or justified by the circumstances.
 
 Parish Nat’l Bank v. Lane,
 
 397 So.2d 1282, 1286 (La.1981).
 

 In this case, the trial court found that the statements made in the letter regarding Father Roux allegedly giving the missing artwork to his mother as a gift |udo not rise as a matter of law to an invasion of privacy. We agree. While perhaps embarrassing to the Plaintiffs, the statements which are alleged to constitute an invasion of privacy by the Defendants do not relate to private matters. Rather, they relate to missing church property, a matter in which Defendants and the members of the parish had an interest. Plaintiffs had no right to privacy from intrusion from the Finance Council’s inquiry about the artwork under the circumstances of this case. As members of the Finance Council, Defendants had a duty to conduct an inventory of the church’s property. Here, there was a question as to what happened to an expensive piece of artwork that had been donated to the church but had been inexplicably replaced with an inexpensive copy. Balancing the Finance Council’s interest in locating the artwork against the alleged Plaintiffs’ privacy interest, we find that Defendants were justified in reporting this discrepancy to the Vicar General under the circumstances. Plaintiffs do not have an actionable claim for invasion of privacy against Defendants. Accordingly, the trial court’s grant of summary judgment on the invasion of privacy claim was also proper.
 

 Conclusion
 

 The Parish Finance Council had a duty to review the financial reports and certify the movable property inventories of the parish. Pursuant to this duty, Defendants reviewed and attempted to reconcile the financial records and when they were unable to do so, contacted the Vicar General with their concerns in writing and asked for assistance in determining how to resolve the discrepancies. As members of the Finance Council, Defendants statements contained in the letter to the Vicar General were privileged. Plaintiffs have come forth with no evidence to support a contention that the Finance Council abused the privilege by knowingly making false statements or relaying false information about Plaintiffs in bad faith.
 

 | ^Moreover, the facts do not support an actionable claim for invasion of privacy. Accordingly, Defendants are entitled to summary judgment and the trial court’s judgment granting Defendants’ motions for summary judgment is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . In a sworn affidavit signed on March 28, 2003, Parishioner Mary Monti stated that after Mass in October or November 2001, she spoke with defendant Suprean "regarding the report” and Reverend Roux. She then stated that Suprean said, "I don't want this man to be pastor in any church.”