# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2023

Lyle W. Cayce
Clerk

No. 20-30522

Carolyn D. Spears,

*Plaintiff—Appellant*,

*versus*

Louisiana College,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:18-CV-387

Before Richman, *Chief Judge*, and Davis and Dennis, *Circuit Judges*.
Per Curiam:*

Carolyn Spears sued her former employer, Louisiana College ("LC"), alleging: (i) age discrimination, (ii) sex discrimination, (iii) disability discrimination, (iv) unlawful retaliation, (v) breach of contract and (vi) defamation. The district court denied Spears's motion for partial summary judgment on her retaliation and breach of contract claims and granted

---

* This opinion is not designated for publication. 5th Circuit Rule 47.5.4.

summary judgment in favor of LC on her age discrimination, sex discrimination, disability discrimination, retaliation, breach of contract, and defamation claims. We REVERSE the district court's dismissal of her age discrimination, sex discrimination, disability discrimination, and retaliation claims and otherwise AFFIRM.

## I. Background

LC is a nonprofit corporation which operates as a private, co-educational college of liberal arts and sciences. Carolyn Spears, born in 1941, became a full-time member of LC's faculty in the Department of Health and Physical Education in 1977 and was tenured in 1984. On February 28, 2007, she executed a "Retirement Plan Options" agreement, in which she "elect[ed] to retire by July 31, 2007, and receive the benefits available to current retirees." Retiring by this date allowed Spears to freeze her benefits and avoid future premium increases or other changes.

Notwithstanding her retirement, Spears continued to teach, executing yearly contracts under the title of "Senior Professor." These contracts expressly stated that they were "subject to non-renewal." However, the parties disagree about whether executing this option affected Spears's tenure status. The contracts also incorporated by reference "all college policies . . . set forth in the Faculty Handbook[.]" The Faculty Handbook, in turn, includes a "Definition of Tenure" which states, in relevant part, that "[t]enure is the reasonable expectation of continued employment by the College[.]" In 2012, Spears was diagnosed with adenocarcinoma and underwent a full hysterectomy and radiation treatment. Her cancer reoccurred in 2014, and she underwent treatment through summer 2016. In August 2016, although no longer in treatment at that point, Spears applied for and received long-term disability and sick leave from LC. The parties dispute whether Spears intended to return to teaching after this. Spears avers

that she had no intention of retiring and that other members of LC's faculty and administrative team engaged in a harassment campaign against her to induce her to retire as a result of her involvement in filing a "whistleblower" complaint and Equal Opportunity Employment Commission (EEOC) complaints against LC.

Shannon Tassin, the head of the Human Resources Department at LC, testified that Spears verbally told Tassin that she was "not returning." But Spears denied that she ever told Tassin she would not come back. In an email sent from Spears to Tassin on March 16, 2017, Spears stated her recollection that, "I will be paid my full contract for this year. . . and then start next year[']s contract when I start back August 1," and asked Tassin whether that was correct. Tassin's reply, sent almost two weeks later, declined to either confirm or deny that Spears would resume working on August 1.

Beginning in the 2017–18 academic year, LC reorganized its Department of Health and Physical Education by moving it out of the School of Education and putting it under the Department of Nursing/Allied Healthcare. This resulted in Spears being "demoted" from her position as Chair of the Health and Physical Education Department and having her salary decreased by approximately $500 per month. Spears contends this was part of the campaign by LC to induce her to retire and that she was replaced in her administrative roles by a younger, male subordinate.

In early 2017, Spears received a letter from Dr. Richard Brewer, then President of LC, informing her that LC was "mov[ing] in a different direction" and would not be renewing her contract as a Senior Professor for the 2017–18 school year. Although the letter was dated February 2, 2017, Spears claims she did not actually receive it until April 20, 2017. The date is significant because Spears filed an EEOC complaint against Brewer and

No. 20-30522

Cheryl Clark, another member of the LC administration, on January 25, 2017. LC received notice of this complaint "on or around March 17, 2017."[1] Spears avers that LC did not in fact send her the termination letter until after it had received the EEOC complaint, and that this action thus constitutes retaliation. Spears had also been previously involved in another EEOC complaint against LC: she and Joe Aguillard, the former President of LC, had drafted an EEOC complaint and a whistleblower complaint in 2015, which were discovered and seized by LC via a private investigator. Aguillard was subsequently terminated in March 2016.

Jason Tinsley and Sonia Tinsley, a younger couple, were hired by LC and ultimately took over Spears's classes and faculty duties. The parties dispute whether the Tinsleys were hired to "replace" Spears. After Spears was terminated, Spears's sister, Charlotte McIntosh posted to an LC alumni Facebook group complaining about this decision. Brewer responded in a post which Spears avers constituted defamation.

Spears brought claims against LC for age, gender and disability discrimination[2] and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e); the Age Discrimination in Employment Act, 29 U.S.C. §623 ("ADEA") and/or Title II of the Americans With Disabilities Act, 42 U.S.C. §1231, et seq. ("ADA"), as well as claims under Louisiana state law for defamation and breach of her employment contract. LC moved for summary judgment to dispose of all of Spears's claims against it, and Spears moved for partial summary judgment. The district court granted LC's motion for summary judgment and denied Spears's cross-motion for

---

[1] The notice is dated March 9, 2017.

[2] Spears also alleged religious discrimination below but does not appeal the district court's dismissal of that claim here.

partial summary judgment, dismissing all of Spears's claims on July 24th, 2020. Spears now appeals to this court.

## II. Standard of Review

We review a district court's grant of summary judgment *de novo*, applying the same standard on appeal as was applied below. *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.*

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). We must resolve factual controversies regarding the existence of a genuine issue for trial in favor of the non-movant. *Id.* But a factual dispute precludes summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Unsupported, conclusory, or inadmissible evidence is

No. 20-30522

insufficient to defeat a motion for summary judgment. *Id.*; *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

### III. Discussion

### A. Age Discrimination

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "[L]iability depends on whether the protected trait actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000). The individual's age must have "actually played a role in [the employer's decision making] process and had a determinative influence on the outcome." *Id.* at 141. Therefore, the plaintiff must prove by a preponderance of the evidence that age was the "but-for" cause of the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). This can be shown by direct or circumstantial evidence. *Reeves*, 530 U.S. at 141.

Where, as here, a plaintiff relies crucially on circumstantial evidence, she must establish a *prima facie* case of discrimination by showing that she (1) was at least forty years old; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone younger or treated less favorably than similarly situated younger employees. *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003). If the plaintiff makes out this *prima facie* case, the burden shifts to the employer to produce evidence that the adverse action was taken for a legitimate, nondiscriminatory reason. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002). If such a reason is produced, then the employee must provide evidence to rebut the reasons given as pretext for discrimination. *Id.*

Here, the district court held that Spears had failed to even make a *prima facie* case that she was replaced by someone younger, and thus that LC was entitled to summary judgment on this claim. Spears argues that the district court erred in finding that she had failed to present a *prima facie* case that she was replaced by someone younger.

The district court found that Spears's former courses had been spread among several teachers at LC, concluding that such an action does not constitute replacement. But Spears asserted that her classes were only distributed this way during her sick leave. After her termination, she was replaced in her chair position by Sonia Tinsley, and her classes were taken over by Jason Tinsley. Additionally, Spears argues that the district court erred at the outset in concluding that she was not "replaced" if her classes were in fact spread out between different teachers. We agree. Employers may not circumvent Title VII protections by "fractioning" an employee's job. *See, e.g., Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997); *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992); *Hardy v. Shell Chem. Company*, 693 F.Supp.2d 611, 620, n.25 (E.D. La. 2010). Spears has made a *prima facie* case that she suffered age discrimination.

Thus, the burden shifts to LC to produce evidence that the adverse action was taken for a legitimate, nondiscriminatory reason. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002). If such a reason is produced, then the employee must provide evidence to rebut the reasons given as pretext for discrimination. *Id.* Here, LC argues that Spears's contract was not renewed for the 2017-18 school year because she informed the College that she would not be returning. But Spears asserts that she never told anyone that she was not coming back. And as Spears points out, the fact that she was "terminated" logically belies the argument that LC believed that she was not returning. Emails between Spears and the Director of Human Resources/Payroll at LC, which Spears introduced into the record, also

indicate that Spears did in fact intend to come back.  Taking this evidence in the light most favorable to Spears, there is at minimum a genuine issue of fact as to whether Spears told LC that she would not be returning.  If she did not, LC has failed to assert a plausible non-discriminatory reason for Spears's termination.  The district court erred in dismissing this claim at the summary judgment stage.

### B. Sex Discrimination

To establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must show that (1) she was within the protected class; (2) she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) the position sought was filled with someone outside the protected class. *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001).  Spears is a woman, was qualified for the position she held, and was terminated.  The district court nevertheless held that Spears failed to make a *prima facie* case, accepting LC's assertion that Spears was not replaced because her duties had been distributed between a number of employees.  As discussed *supra*, we disagree.  And while LC observes that some of the employees who took over Spears's duties were female, Jason Tinsley, whom Spears asserts began teaching her classes after her termination, was not.  Spears has thus at least made a *prima facie* case of gender discrimination.

LC's proffered nondiscriminatory reason for terminating Spears is that she said she would not return for the 2017–18 academic year.  We have explained above, however, that there are at least an issue of fact as to whether this was mere pretext.  The district court thus erred in dismissing Spears's sex discrimination claim at the summary judgment stage.

No. 20-30522

## C. Disability Discrimination

The ADA prohibits employers "from discriminating against a 'qualified individual with a disability on the basis of that disability.'" *Burton v. Freescale Semiconductor, Inc.* 798 F.3d 222, 226–27 (5th Cir. 2015) (internal quotation marks omitted) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). In a termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or make a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Direct evidence "is evidence that if believed, proves the facts of discriminatory animus without inference or presumption." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 310 n.6 (5th Cir. 2004). Absent direct evidence of discrimination, a plaintiff must make a *prima facie* case of discrimination by showing she (1) has a disability; was regarded as disabled, or has a record of a disability; (2) was qualified for the job; and (3) was subjected to an adverse employment decision on account of her disability. *Cannon v. Jacobs Field Services North America, Inc.,* 813 F. 3d 586, 590 (5th Cir. 2016) (citing *LHC Grp.,* 773 F.3d at 697). "If [s]he makes that showing, a presumption of discrimination arises, and the employer must 'articulate a legitimate non-discriminatory reason for the adverse employment action.'" *Id.* at 590 (quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009)). "The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.* (citing *Chevron Phillips Chem. Co.,* 570 F3d. at 615).

As with Spears's other discrimination claims, she has set forth a *prima facie* case of disability discrimination. It is undisputed that Spears had cancer and underwent treatment for cancer, that she was qualified for her job, and that Brewer explicitly stated that her contract was not renewed "because she was too ill to teach." At the summary judgment stage, taken as true, these

facts present evidence of disability discrimination which set forth a *prima facie* case of disability discrimination. The burden thus shifts to LC to produce evidence that the adverse action was taken for a legitimate, nondiscriminatory reason. Yet as explained above, a fact issue exists as to whether LC's proffered nondiscriminatory reason for terminating Spears—that she informed LC she would not return—was pretext. Spears's disability discrimination claim should have been allowed to go forward as well.

### D. Retaliation

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she participated in a Title VII protected activity; (2) she suffered an adverse employment action by her employer; and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (citing *Aryain v. Walmart Stores Tex., LP*, 534 F.3d 473, 484 (5th Cir. 2008)). Spears argues that the district court erred in granting summary judgment in favor of LC on her retaliation claims, and in failing to grant summary judgment in her favor.

There is no dispute as to the first two prongs: Spears participated in Title VII protected activity in her filing of EEOC complaints, and she was terminated. The district court held that Spears has established a *prima facie* case of retaliation, reasoning that LC had not presented evidence that it terminated Spears for a legitimate reason before learning of her EEOC complaint, creating an issue of fact as to whether her termination letter may have been backdated. Additionally, it is uncontested that LC knew about the drafts of EEOC complaints which were seized in February 2016. Thus, it found that Spears had established a *prima facie* argument that her termination had a causal connection with her filing of these EEOC complaints.

No. 20-30522

LC does not contest this holding, but argues that the district court was correct in finding that LC carried its burden in demonstrating a legitimate, non-retaliatory reason for her termination, and that Spears failed to show that this reason was pretextual. We disagree. As discussed *supra*, there is at minimum a genuine issue of material fact as to whether Spears told LC that she did not intend to return to work after her medical leave. LC did not carry its burden, and the district court erred in entering summary judgment on this claim.

### E. Breach of Contract

To state a breach of contract claim, Louisiana law requires a plaintiff to show that "(1) the parties consented to be bound through offer and acceptance; (2) the obligor failed to perform a conventional obligation; and (3) the failure to perform resulted in damages to the obligee." *Crescent City Surgical Centre v. Cigna Health and Life Ins. Co*, No. 18-11385, 2020 WL 1503534 (E.D. La. March 30, 2020) (citing La. Civ. Code arts. 1927 & 1944 and *Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/2011); 68 So.3d 1099, 1108–09)). The plaintiff must also "allege a breach of a specific provision of the contract." *Id.*; *Loque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2003).

Spears moved for partial summary judgment on her breach of contract claim, contending that the non-renewal of her annual contracts violated her tenure. The district court denied her motion on two grounds. First, the district court held that Spears's complaint did not assert a breach of contract claim in the first place. Second, the court held that Spears failed to show that there was no genuine dispute of fact as to whether she still had tenure when she was terminated.

Initially, we disagree with the district court's determination that Spears did not adequately plead a claim for breach of contract. The district court found that Spears failed to allege the elements of a breach of contract

No. 20-30522

claim with "sufficient particularity" and "failed to identify in her Complaint any specific contract provision LC allegedly breached." But the basis of Spears's breach of contract claim is that she had tenure when she was terminated, and therefore that she could be terminated only for cause. Although LC and the district court are correct that Spears's complaint does not explicitly delineate a breach of contract claim, it is axiomatic that a plaintiff must plead facts, not legal theories. *See, e.g.*, *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). Spears's complaint adequately alleges facts stating the elements of a breach of contract claim. She alleged the existence of a contract under which she, as a tenured teacher, could be terminated only with cause, and alleged that she was terminated without adequate cause or for pretextual reasons. Thus, the district court erred in dismissing Spears's breach of contract claim as failing to present a cause of action for breach of contract.

However, we agree with the district court's dismissal of the breach of contract claim because LC did not breach the adjunct professor contract in failing to renew it. Spears argues that LC breached the 2016-2017 adjunct professor contract by failing to renew it.[3] However, the contract that Spears alleged LC breached expressly stated that it was (1) subject to nonrenewal, (2) limited to the period of time specified in the contract, and (3) offered no expectation of any future contracts.[4] In contrast, the tenured faculty contract

---

[3] Spears, however, does not dispute that LC paid her for the full term of the contract.

[4] While Spears presented an email from Aguillard, LC's former president, in which he told Spears to consider her tenure "ongoing" even after her retirement, such evidence cannot be proffered to change the interpretation of the "clear and explicit" terms of the adjunct professor contract, under which Spears was not entitled to continued employment on a yearly basis. LA. CIV. CODE art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

Spears previously executed—which expired in 2007—notably did not include any language stating that it was subject to the same limitations as the adjunct professor contract. While Spears is correct that the adjunct professor contract incorporated the faculty handbook, the handbook merely defines tenure as the "the reasonable expectation of continued employment by the College on an annual contractual basis," an expectation that the adjunct professor contract explicitly disclaimed. Moreover, Spears herself conceded that she understood that she was not guaranteed employment from year to year under the adjunct professor contract. The district court thus properly dismissed Spears's claim for breach of contract because the adjunct professor contract expressly disclaimed any expectation of continued employment, and Spears has pointed to no other contract as forming the basis of her claim. We affirm the district court's dismissal of her breach of contract claim.

## F. Defamation

Defamation requires proof of five elements in Louisiana law: (1) defamatory words; (2) publication; (3) falsity; (4) actual or implied malice; and (5) injury. *See Carter v. Catfish Cabin*, 316 So.2d 517, 521 (La. App. 2 Cir. 1975); *Tate v. Bradley*, 837 F.2d 206, 208 (5th Cir. 1988). If facts sufficient to establish even one element of the defamation tort are absent, a plaintiff's cause of action fails. *See Costello v. Hardy*, 2003-1146 (La. 1/21/04); 864 So. 2d 129, 139. *Moore v. Cabaniss*, 29,834 (La. App. 2 Cir. 9/24/97); 699 So.2d 1143, 1146, *writ denied*, 97-2667 (La. 1/0/ 98); 705 So.2d 1108 ("failure of any one of these elements of proof is fatal"). The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is a legal question for the court: it must determine "whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense." *Cooksey v. Stewart*, 41,336 (La. App. 2d Cir. 8/23/06); 938 So.2d 1206, 1211, *writ denied*, 06-2348

No. 20-30522

(La. 12/8/06); 943 So.2d 1087 (citing *Sassone v. Elder*, 626 So.2d 345, 352 (La. 1993)).

Spears argues that the district court erred in granting summary judgment in favor of LC on her state law defamation claim. Spears asserted a claim against LC for defamation based on a Facebook posting by Dr. Brewer made in response to an online comment made by McIntosh, Spears's sister, that was critical of LC's termination of Spears.

The district court held that the posting was not false or defamatory and that there was "no evidence to suggest that LC made the post with malice, actual or implied, or that it violated any confidentiality owed." Spears argues that this letter contained multiple false statements; in particular, that 1) she had retired from LC's full time faculty in 2007; 2) she had served as a contract adjunct senior professor which constituted only a year-to-year engagement on an as-needed basis; and 3) that LC paid Spears "her full salary for two years without her ever teaching a single student, although it was not obligated to do so." Spears argues that this is "defamatory because it impliedly accused her of being a 'gold-digger' or 'free-loader' and held her up to contempt and ridicule." She also argues that the language is defamatory per se. *Id.* The elements of injury and malice are presumed in cases of per se defamation. *See Bell v. Rogers*, 29,757 (La. App. 2 Cir. 8/20/97); 698 So. 2d 749, 754.

We agree with the district court that the letter's language is not defamatory per se. "Words which expressly or implicitly accuse another of criminal conduct or by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se." *Costello v. Hardy*, 2003-1146 (La. 1/21/04); 864 So. 2d 129, 140. Spears argues that this letter tends to damage her personal or professional reputation. On its face,

14

the language in Brewer's letter falls well short of language previously found to be per se defamatory in Louisiana. *See, e.g.*, *Maggio v. Liztech Jewelry*, 912 F. Supp. 216 (E.D. La. 1996) (per se defamatory to describe a competitor's merchandise designs to have been 'purloined'); *Freeman v. Cooper*, 414 So.2d 355 (La. 1982) (false accusation of a lawyer's lying to the court and attempting to suborn a new judge defamatory per se); *Garrett v. Kneass*, 482 So.2d 876, 880 (La. App. 2 Cir. 1986) (false accusation of threats on a political candidate's family defamatory per se); *Goldsmith v. Unity Ind. Life Ins. & Sick Benefit Ass'n*, 128 So. 182 (La. App. Orleans Par. 1930) (imputing loathsome disease or sexual misconduct is defamatory per se).

If the language was not defamatory per se, it may still be capable of defamatory meaning. However, to prevail on such a claim Spears would then need to show, *inter alia*, actual or implied malice. Malice, or fault, "is a lack of reasonable belief in the truth of the statement giving rise to the defamation." *Bussie v. Lowenthal*, 535 So.2d 378, 381 (La. 1988). Yet the district court found, "Spears'[s] only support for the assertion that the post was made in bad faith is her personal belief and feelings, and uncorroborated assertions are inadequate to support a defamation claim." Spears thus fails to "provide the quality or quantity of evidence to establish a *prima facie* case" of defamation under Louisiana law. *Esiverne v. Times Picayune, LLC*, 950 So.2d 858 (La. App. 4th Cir. 2006); *Roux v. Pflueger*, 2009-0009 (La. App. 4 Cir. 7/8/09), 16 So. 3d 590, 596, *writ denied*, 2009-1799 (La. 11/6/09), 21 So. 3d 309 (rejecting "[p]laintiffs['] use [of] their personal beliefs and feelings to support their assertions that Defendants acted in alleged bad faith").

We therefore affirm the district court's grant of summary judgment to LC with respect to Spears's defamation claim.

\* \* \*

No. 20-30522

For the foregoing reasons, we AFFIRM IN PART; REVERSE IN PART; and REMAND for further proceedings consistent with this opinion.